The heirs of Mrs. Homer Clostio have instituted this suit for damages resulting from the death of their mother, who was accidentally killed in an automobile accident which occurred in the Town of Abbeville in Vermilion Parish, Louisiana, on August 27, 1946. The suit is directed against Joseph Romero, the driver of the automobile, A.D. LeBlanc, employee of the Sinclair Refining Company, the Sinclair Refining Company, and its insurer, Zurich General Accident Liability Insurance Company, Limited.
The petition alleges that A.D. LeBlanc, who was an agent of the Sinclair Refining Company and was acting in the course of his agency at the time, took his automobile to a garage in the Town of Abbeville operated by one West Richard, for the purpose of having a glass in the door of the car changed. That A.D. LeBlanc thereupon requested West Richard to have someone take him home in his car and then bring *Page 285 
the car back to the shop for the repairs. Richard pointed out one of his employees to LeBlanc to take him to his business or to his home, but LeBlanc objected to using this particular employee and thereupon approached Joseph Romero and specifically requested that Romero drive him to his home or his place of business, and Romero agreed to do so. A.D. LeBlanc drove his automobile to his place of business and dismounted, and Joseph Romero started back to the garage with the automobile. On the way back to the garage, the mother of the plaintiffs was struck by the car driven by Joseph Romero as she was walking across the street, and it is alleged that the accident was the result of the negligence of the said Joseph Romero. The petition specifically avers that Romero was operating the automobile with the express permission and at the specific request of A.D. LeBlanc, and then alleges that the Zurich General Accident and Liability Insurance Company, Limited, had issued a policy of public liability insurance covering the Sinclair Refining Company and A.D. LeBlanc and any person who was using the automobile in question with the permission of LeBlanc, or the Sinclair Refining Company. The petition also alleges that Joseph Romero was an independent contractor working in the same garage where West Richard worked; that Romero went to work whenever he so desired, his hours being his own, and West Richard had no control over the said Joseph Romero.
Exceptions of no right of action were filed on behalf of Sinclair Refining Company, A.D. LeBlanc and Zurich General Accident and Liability Insurance Company, Limited. In the exception filed on behalf of Zurich General Accident and Liability Insurance Company, Limited, specific reference is made to Section 3 of the policy of insurance which is usually referred to as the "omnibus clause" and which reads as follows:
"III. Definition of 'Insured.' The unqualified word 'insured' wherever used in coverages A and B and in other parts of this policy, when applicable to such coverages, includes the named insured and except where specifically stated to the contrary, also includes any person while using the automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is with the permission of the named insured. The insurance with respect to any person or organization other than the named insured does not apply: * * *
"(c) to any person or organization, or to any agent or employee thereof, operating an automobile repair shop, public garage, sales agency, service station or public parking place with respect to any accident arising out of the operation thereof;"
Exceptions of no cause or right of action were filed on behalf of Joseph Romero and with reservation of the exception, an answer has been filed on Romero's part.
The exceptions of no right of action filed by Sinclair Refining Company, A.D. LeBlanc and Zurich General Accident and Liability Insurance Company, Limited, were taken up, evidence was introduced thereunder, and after submission to the court, the District Court rendered judgment maintaining the exceptions and dismissing the suit of the plaintiff against the defendants named. From this judgment the present appeal has been taken.
 Motion to Dismiss
When this case was called for argument in this court, a motion was filed on behalf of the appellees to dismiss the appeal on the ground that at the time the exceptions were tried in the District Court, it had been agreed that the District Court could render judgment in vacation, reserving to either party the right to appeal "by petition" with the same force and effect as though rendered in regular term in open court. The motion to dismiss declares that judgment dismissing the plaintiffs' suit was rendered during vacation in August, 1947, and plaintiffs moved for an appeal in open court by oral motion in open court on October 1, 1947, which was a subsequent term of court to the one in which judgment was rendered, and, therefore, the plaintiffs having failed to take the appeal by petition and citation, the appeal should be dismissed.
The plaintiffs and appellants take the position that inasmuch as the judgment was rendered during vacation, and not during any prior term of court, and inasmuch as *Page 286 
the appeal was taken as soon as court opened, the motion for appeal was not made at a "subsequent" term of court but should be considered to have been taken at the "same term" as required by Article 573 of the Code of Practice. The record shows that the term of court ended on June 30th, and the next term convened in September. The judgment was rendered by the court in vacation in accordance with the stipulation between the parties, and a motion for appeal was made by the attorney for the plaintiffs in open court on October 1st, and at that time, pursuant to the said motion, an order was entered "ordering that all necessary parties be notified and cited of this appeal." Pursuant to this motion and order, the citation of appeal was issued and all of the parties presently before the court were duly cited and notified.
[1] The judgment was rendered by the Court during vacation, under an agreement of counsel, and while the agreement gave the judge the right to grant an order of appeal at that time, he did not exercise that right, and the order of appeal was not granted until Court resumed after vacation. For all intents and purposes, therefore, the judgment may be said to have been rendered at the same term just as well as it can be said to have been rendered at a prior term before court went into vacation. However, in any event we do not believe the motion to dismiss is well founded. The law favors the granting of appeals.
[2] There are a number of decisions which point out that where the motion to dismiss the appeal strikes at the foundation of the right of the appeal itself, the motion should be maintained, whereas if the motion relates to some informality in connection with the appeal which does not affect the right of appeal itself or the jurisdiction of the Appellate Court, such informality should not result in preventing a review of the case by the Appellate Court. Coreil v. Town of Welsh, 120 La. 557, 45 So. 438; Haydel v. Major, La. App.,19 So.2d 628; Watson v. Young, La. App., 34 So.2d 86.
[3] In the present case, the order directed the parties defendant to be notified of the appeal, and a citation and notice of appeal was actually issued and served upon the parties defendant. All parties had full notice of the appeal and of all action which was taken through service of the notice and citation, to the same extent as though the procedure had been by "petition." The motion to dismiss was filed some time thereafter when the case was called for argument in the Appellate Court. It is clear that no harm has resulted to any of the parties from the procedure taken, that all were fully advised in ample time to protect themselves fully, and that the procedure used in perfecting the appeal, if not strictly complying with the statutory law, was an informality only and should not result in preventing a review of the case by this court.
The motion to dismiss the appeal is therefore overruled.
 On the Merits
[4-6]Plaintiffs objected to the introduction of any evidence under the exceptions of no right of action. Over the objection, evidence was introduced for the purpose of showing that Joseph Romero was not, in fact, the agent of A.D. Le-Blanc and Sinclair Refining Company, showing the express provisions of the insurance Policy issued by the Zurich General Accident and Liability Insurance Company, Limited, and showing that Romero was, in fact, the employee of West Richard. It has been repeatedly held that where the trial and final disposition of an exception will put an end to a case, it should he disposed of before going into a trial on the merits so as to eliminate a protracted and unnecessary trial. Miller v. United States Fidelity Guaranty Company, La. App., 169 So. 259; Beard v. Vincent, 174 La. 869, 141 So. 862; Jones v. Shehee-Ford, Wagon Harness Company, Inc., 183 La. 293, 163 So. 129. It is likewise clear that on the trial of an exception of no right of action, the exceptor has the right to offer evidence for the purpose of showing that the plaintiff does not possess the right to make a claim or that the right itself does not exist. Bartholomew v. Impastato, La. App., 12 So.2d 700. The objection was, therefore, *Page 287 
properly overruled and the evidence properly admitted.
The evidence introduced shows that on the day before the accident A.D. LeBlanc made an appointment with West Richard to have certain repair work done on his car. On the morning of August 27, 1946, pursuant to the appointment, A.D. LeBlanc took his car to West Richard's garage in the Town of Abbeville for the purpose of having this repair work done. He spoke to West Richard and asked Richard if it was all right for Joseph Romero to drive him back to his office. West Richard replied that, "If Joe wanted to, it was O. K." LeBlanc thereupon apparently asked Romero to drive him and Romero replied to the effect that, "If Mr. Richard is willing to let me go, I was Willing to take him back to his office." LeBlanc drove his own automobile to his office, at which place he got out and Romero took the car and started back to the garage for the purpose of having the repairs made when the accident occurred. There is some little confusion about the exact relationship between West Richard and Joseph Romero, but it appears from the evidence that Joseph Romero had returned from service in the Armed Forces of the United States, and West Richard had offered to allow him to come into his garage and learn the trade of a mechanic. Romero came into the garage, and performed all of the work under the direction and supervision of West Richard. West Richard made the contracts with the customers, fixed the prices of the work to be performed, and actually collected whatever charges were assessed therefor. However, West Richard gave to Joseph Romero the full amount of all collections which resulted from the actual work performed by Joseph Romero, and he received no other wage or compensation. It likewise appears that although Romero worked regularly, his hours were to be determined by himself, and West Richard did not look upon him in the capacity of an employee.
It is not necessary to determine whether Joseph Romero was a servant or employee of West Richard, or whether he was an independent contractor, as contended by plaintiffs. If he was an independent contractor, he was engaged in "operating an automobile repair shop" himself. If he was an employee then he was representing, as employee or servant, West Richard who was "operating an automobile repair shop". Both West Richard and Joseph Romero, either together as master and servant, or separately as independent operators, were engaged in the business of operating the repair shop and performing the services of a mechanic.
[7] It seems to be well established that where the owner of a garage or repair shop, or the servant or employee or agent of the garage or repair shop, delivers cars to customers after they have been repaired, or picks them up from customers for the purpose of taking them to the shop to be repaired, he is in no way the agent or the representative of the owner of the automobile.
[8] There is no doubt that the automobile in the present case was being operated with the permission of A.D. LeBlanc, the owner, and the evidence shows not only that he turned the car over to Romero to take back to the garage, but he had specifically requested Romero to go with him to his place of business to drive the car back to the garage. There is likewise no question but that the automobile was being returned to the repair shop in order that the repairs might be made by that shop, either by West Richard himself, or by Joseph Romero, both of whom were mechanics and both of whom performed such services. Arrangements had been made to have the car repaired, and it was delivered by the owner, A.D. LeBlanc, to Joseph Romero for no other purpose than for its return to the repair shop to undergo the repairs. Thus it is clear that the accident was one which arose "out of the operation" of an automobile repair shop, while that automobile was being driven by a person who operated the automobile repair shop, or by an agent or employee of the person who operated an automobile repair shop. Although being operated with the permission of A.D. LeBlanc, clearly such operation falls within the exception contained in the insurance policy issued by the Zurich General Accident and Liability Insurance Company, Limited quoted above. *Page 288 
The Louisiana Supreme Court has finally put at rest all questions with reference to a situation of this kind in the case of Nyman v. Monteleone-Iberville Garage, Inc.,211 La. 375, 30 So.2d 123, 125. In that case the plaintiff's husband was killed by an automobile belonging to W.K. Weaver as it was being taken on his instruction to the Monteleone-Iberville Garage by one of the garage employees sent to the Monteleone Hotel to pick up the car for storage. Weaver had specifically requested that the garage send over for his automobile, and an employee of the garage went to get it. The court discussed the matter in some detail. An exception of no cause or right of action was filed on behalf of the United States Fidelity and Guaranty Company, as the insurer of the owner of the automobile based upon a provision contained in the policy of insurance which Was identical with the "omnibus clause" and its exception quoted above and contained in the policy involved in this case. The court in the Nyman case maintained the exception and said:
"Unquestionably the car in the instant case was being used with the permission of the insured under the facts pleaded. in the petition and without the limitation above referred to we think the plaintiff would be entitled to prosecute this suit against the insurer of Weaver, the owner of the car. The question that arises is whether the injury sustained in the instant case is one of those specifically stated to be exempt from the coverage in the omnibus clause within the intendment of the parties as stated in Subsection C under the definition of the term 'insured.'
" 'An insurance policy is a contract and the rules established for the construction of written instruments apply to contracts of insurance.' 14 R.C.L. 925, Section 102. See, also, Wallace v. Insurance Co., 4 La. 289; Parks v. Hall,189 La. 849, 181 So. 191; and Hemel v. State Farm Mutual Automobile Insurance Co., La.Sup., 1947, 29 So.2d 483. And under the express provisions of the Revised Civil Code, to be found in Section 5 of Chapter 3 of Title IV, under the heading 'Of the Interpretation of Agreements,' it is provided that 'courts are bound to give legal effect to all * * * contracts according to the true intent of all the parties,' and such 'intent is to be determined by the words of the contract, when these are clear and explicit and lead to no absurd consequences.' Article 1945. In arriving at the intent of the parties 'All clauses of agreements are interpreted the one by the other, giving to each the sense that results from the entire act.' Article 1955. It is only when a clause is susceptible of two interpretations that it must be understood in the sense in which it may have some effect rather than in a sense that would render it nugatory (article 1951) and only in doubtful cases that the agreement must be interpreted against the party who contracted the obligation. Article 1957.
"Just what was the intention of the parties in stipulating that 'The insurance with respect to any person or organization other than the named insured does not apply: * * * (c) to any person or organization, or to any agent or employee thereof, operating an automobile repair shop, public garage, sales agency, service station or public parking place with respect to any accident arising out of the operation thereof'?
* * * * * *
"While it may appear at first glance that the use of the automobile sought to be excluded is limited to accidents arising out of the use of the automobile by the class of persons engaged in the designated businesses, or their employees, a fair analysis of this provision, when considered with the entire contract, shows, we think, that the limitation is applicable to accidents arising out of the operation of an automobile repair shop, public garage, sales agency, service station or public parking place when the automobile is being used by the operators of such businesses or their employees with the permission of the named insured.
"Clearly the death of the husband of the relatrix in this case resulted from an accident that occurred while the insured car was being used with the permission of the insured by an employee of a public parking place in the operation of that business and it is our opinion, therefore, that the district court and the Court of Appeal for the *Page 289 
Parish of Orleans correctly concluded the injury was not covered under the terms of the policy and properly maintained the exceptions of no cause and no right of action filed by the insurer."
In this case Joseph Romero was taking the car back to the repair shop for no other purpose than for him or West Richard to make the repairs agreed upon. He was operating the automobile with the permission of A.D. LeBlanc, only with respect to the operation of the repair shop by him individually, or as the employee of West Richard. Thus, the operation fell within the express exception to the omnibus clause above quoted, and the policy did not afford coverage to any resulting accident. It is clear that under the decision of the Supreme Court of Louisiana in the Nyman case, supra, the plaintiffs have no right of action against the defendant, Zurich General Accident and Liability Insurance Company, Limited, and the decision of the District Court maintaining the exception filed by this company is affirmed.
There is, however, some further question to be presented as regards the defendants, A.D. LeBlanc and Sinclair Refining Company. Plaintiffs contend that Romero, the driver, was the agent of LeBlanc, and the Sinclair Refining Company, the owner, being specifically so designated and acting pursuant to the special request of LeBlanc, and therefore, LeBlanc and Sinclair Refining Company are responsible for his negligence. It is shown by the pleadings and the evidence that A.D. LeBlanc was the agent of the Sinclair Refining Company. It is also shown that A.D. LeBlanc specifically requested Joseph Romero to go with him to his place of business to return his car to the shop for repairs. There is some question as to whether or not the permission of West Richard was required before he could make this trip, and also some question as to whether a young boy at the station had offered his services to go with A.D. LeBlanc to bring the automobile back to the garage, and whether his services had been refused by LeBlanc, who preferred to have Joseph Romero. The question as to whether either A.D. LeBlanc or Sinclair Refining Company, or both of them, are responsible for the action of Joseph Romero depends upon whether or not Joseph Romero was, in fact, their agent and under their control. If this agency and control existed, then it would make no difference how many other employments Romero may have had or what business he was engaged in. In 5 Blashfield Cyclopedia of Automobile Law and Practice, Perm. Ed., § 2920, the author states:
"Thus a person put in charge of an automobile by the ownerand subject to the direction and control of such owner is his agent and servant, and the owner is liable for his negligence, no matter how many employments he may then have had with others.
"As will be shown in another connection, a driver, to whom an owner of an automobile commits its custody and operation, though in the general employ of another, may, for the time being, be the servant and agent of the owner.
"Thus, one in the general employment of a garage keeper may become pro hac vice the servant of the owner of an automobile, so as to charge the owner with the negligence of such employee in driving the car." (Italics ours.)
[9] Although the owner may be responsible in the instance referred to above, it is to be noted that as a prerequisite to such responsibility, the owner must be in control and the operation of the automobile must be subject to his direction. Unless the element of control is present, the owner, who places his automobile in the hands of someone to take to a garage, cannot be held responsible. As stated in 5 Blashfield Cyclopedia of Automobile Law and Practice, Perm. Ed., § 2920:
"An owner who does not control the servant to whom he commits his car, and does not assume to direct him in the manner of doing his work, is not, however, liable for his negligence."
[10] The evidence introduced in this case specifically shows that A.D. LeBlanc gave no instructions whatever to Joseph Romero as to the route be should take in returning the car to the garage, nor was *Page 290 
anything said relative to the manner of driving. He gave Romero no instructions whatever, but states that since he knew that Romero was a careful driver, he simply turned his car over to him to take it back to the repair shop in order that the repairs might be made. Romero testified that he was requested to take Mr. LeBlanc to his office; that he took the car from Mr. LeBlanc at his office for the purpose of bringing it back to the garage, and he came back alone. There is no evidence that any instructions were given to him by LeBlanc with reference to the manner of operation or the course to be followed, and therefore, it is clear that LeBlanc exercised no control whatever over Romero. Under the circumstances here presented, the driver of the automobile was not the agent of the owner, and the owner is not responsible for any ensuing damage which may have resulted due to the negligence of the driver.
Blashfield in his Cyclopedia of Automobile Law and Practice, Perm. Ed., vol. 5, § 2966, at page 104, states:
"Where an automobile owner drives to a garage and there takes aboard the garage owner, who is to repair his car, and who, at the car owner's request, goes with the owner, and drives the car back for repairs after the owner disembarks, the owner retaining no supervision over the mechanic, either as to the manner or method of repairs or as to the manner of his return to the garage, the car owner is not liable for injuries caused by the negligence of the garage owner in driving back to the garage."
Plaintiff relies to a large extent upon the case of Stephanelli v. Yuhas (American Casualty Co. of Reading, garnishee), 135 Pa. Super. 573, 7 A.2d 124, 125. In the cited case George Yuhas was an employee of Pennsylvania Hide 
Leather Company and on the day of the accident the truck of his employer broke down. He took it to the repair shop for service and it was found that a bolt was needed which was not in stock at the repair shop. Yuhas stated he had to go to Scranton (apparently a near by town) to get his pay check and he agreed to get the bolt. The repair shop owner, Walsh, gave Yuhas permission to use his wife's (Jean Walsh) automobile to make the trip and on the trip the accident occurred. The facts in this case are thus very different from those in the case before us for consideration. It is clear that in the Stephanelli case the driver was acting in the course of his employment, on a mission that would enure to the benefit of his employer, the owner of the truck, and he was clearly not the agent of the owner of the garage, and the Pennsylvania Court so found. Thus, as the Court held, the exception in the policy relating to the use of the car in connection with the garage business had no application. However, the Court in the Stephanelli case recognized the rule that control and supervision over the driver is the important factor, and in the course of the opinion states, "more precisely, the inquiry is under whose control and supervision Yuhas was when the accident happened". The Court concluded that under the evidence Yuhas was under the control and supervision of his employer, and not an agent or employee of the repair shop owner, Walsh. The cited case, therefore, is not contrary to the rule hereinabove set out.
Inasmuch as Romero was not the agent of A.D. LeBlanc, it is clear that he cannot be held to be the agent or representative of Sinclair Refining Company. The exception of no right of action should, therefore, be maintained with respect to the Sinclair Refining Company and A.D. LeBlanc, and the judgment of the District Court in that respect is affirmed.
ELLIS, J., absent; J. J. DAVIDSON, acting as Judge ad hoc. *Page 291