506 P.2d 478

**CONTINENTAL NATIONAL AMERICAN GROUP, Plaintiff-Respondent,**

v.

**ALLIED MUTUAL INSURANCE COMPANY, Defendant-Appellant.**

**No. 10984.**

Supreme Court of Idaho.

Feb. 15, 1973.

Peter J. Boyd, of Elam, Burke, Jeppesen, Evans & Boyd, Boise, for appellant.

Richard C. Fields, George C. Detweiler, of Moffatt, Thomas, Barrett & Blanton, Boise, for respondent.

SHEPARD, Justice.

This is a contest between insurance companies to determine which will have to supply insurance coverage in a suit for injuries arising out of an automobile-pedestrian accident. The sole question for decision is the interpretation and applicability of a policy provision commonly known as an "automobile business exclusion." Continental National brought an action for declaratory judgment to determine which company should supply primary insurance coverage and summary judgment was entered in favor of Continental National. We reverse.

The facts of this matter are uncontroverted. On July 29, 1970, Mrs. Paul Rea took her husband's car to a Boise business establishment, Hill's B. F. Goodrich Company, Inc. (hereinafter Hill's) to have the wheels balanced. Hill's is insured by Continental National American Group (hereinafter CNA). The Rea automobile was insured under a liability policy issued by Allied Mutual Insurance Co. (hereinafter AID). Upon arrival at Hill's Mrs. Rea asked if someone could drive her to work. Jay Hill, President of Hill's, directed an employee, Robert McArthur to drive Mrs. Rea to her place of employment and then return the automobile to Hill's. On the return trip to Hill's McArthur was involved in an accident injuring a pedestrian, John B. Knight. Knight filed suit against Hill's, McArthur and Paul Rea seeking to recover for his injuries. Knight's action is pending the outcome of this appeal.

AID (Rea's insurer) refused to defend against Knight's action because of the following clause in the AID policy:

"Exclusions. This policy does not apply:

\* \* \* \* \* \*

"Under the Liability Coverage and, except with respect to bodily injury or death through being struck by a highway vehicle, under the Medical Expense and Accidental Death Benefit Coverages,

\* \* \* \* \* \*

"(g) to any automobile or trailer while maintained or *used by any person while such person is employed or otherwise engaged in the automobile business,* but this exclusion does not apply to the maintenance or use of an owned automobile (1) by the named insured or a relative, or (2) by any other insured in an automobile business in which the named insured has an interest as proprietor or partner;" (Emphasis supplied.)

CNA (Hill's insurer) brought an action for declaratory judgment in the district court seeking a ruling that AID (Rea's insurer) must supply primary insurance coverage. CNA moved for summary judgment and the district court ruled as a matter of law, that at the time of the accident McArthur was not using the Rea automobile in an automobile business within the meaning of the "automobile business exclu-

sion" clause in the AID policy. The trial court concluded that AID's coverage was primary. This appeal results.

This is a case of first impression in Idaho and the sole issue presented is whether the "automobile business exclusion" clause relieves AID of its burden to supply primary coverage. In short, was the Rea automobile " * * * used by any person while such person is employed or otherwise engaged in the automobile business * * * "?

■ We have consistently held that unambiguous insurance contracts like any other contracts, must be construed in their ordinary and proper sense according to the meaning as determined from the plain language of the policy. Lively v. City of Blackfoot, 91 Idaho 80, 416 P.2d 27 (1966); Miller v. World Insurance Co., 76 Idaho 355, 283 P.2d 581 (1955); Thomas v. Farm Bureau Mutual Ins. Co. of Idaho, Inc., 82 Idaho 314, 353 P.2d 776 (1960). We see no ambiguity in the automobile business exclusion in the AID policy. By its terms the AID policy does not apply and does not furnish coverage if the insured automobile is driven by any person " * * * while such person is employed or otherwise engaged in the automobile business." The AID policy defines "automobile business" as, among other things, "the repairing or servicing of automobiles." Clearly, at the time of the accident, Hill's was engaged in the automobile business. It is equally as clear that McArthur was employed in the automobile business when at the direction of his employer he drove Mrs. Rea to work and then attempted to return the Rea car to Hill's.

We note initially that there are at least three standard types of "automobile business exclusion" clauses. One type provides that the policy does not apply when the insured automobile is "used in the automobile business." This exclusionary clause focuses on the *use* of the insured automobile at the time of the accident and the identity of the driver is only of secondary importance.

A second type of automobile business exclusion clause generally provides that the owner's policy does not apply to:

"any person or organization, or to any agent or employee thereof, operating an automobile repair shop, public garage, sales agency, service station or public parking place *with respect to any accident arising out of the operation thereof.*" (Emphasis added.) Clostio's Heirs v. Sinclair Refining Co., 36 So.2d 283, 285 (La.App.1948)

This second type of exclusion focuses on both the occupation of the driver and the use of the vehicle and as a result is broader in scope than that of the first type.

Still a third type of "automobile business exclusion" clause provides that the owner's policy will not apply while the car is " * * * *maintained or used by any person while such person is employed or otherwise engaged in the automobile business.*" Obviously the terms of the third type of clause focus primarily on the occupation of the person driving the car. It is clear that the instant case involves an "automobile business exclusion" of this third type.

Courts have narrowly construed the first type of exclusionary clause and have generally held that an accident occurring while a service station employee is picking up, delivering, or moving a customer's car is *not* within the meaning of the exclusion. Consequently the owner's policy is usually held to cover such occurrences. Hammer v. Malkerson Motors, Inc., 269 Minn. 563, 132 N.W.2d 174 (1964); Wilks v. Allstate Ins. Co., 177 So.2d 790 (La.App.1965) writ ref'd 248 La. 424, 179 So.2d 18 (1965); Allstate Ins. Co. v. Universal Underwriters Ins. Co., 439 S.W.2d 385 (Tex.Civ.App. 1969); Goforth v. Allstate Ins. Co., 220 F.Supp. 616 (W.D.N.C.1963), aff'd per curiam, 327 F.2d 637 (4th Cir. 1964); Universal Underwriters Ins. Co. v. Allstate Ins. Co., 21 Utah 2d 358, 445 P.2d 772 (1968), reaffirming Christensen v. Farmers Ins. Exchange, 21 Utah 2d 194, 443 P. 2d 385 (1968); *See:* 7 Appleman, Insur-

ance Law and Practice, 1972 Supplement, § 4372, p. 415; Annotation 71 A.L.R.2d 964; *But see*: Sanders v. Liberty Mut. Ins. Co., 354 F.2d 777 (5th Cir. 1965) (applying Alabama law); Universal Underwriters Ins. Co. v. Strohkorb, 205 Va. 472, 137 S.E.2d 913 (1964).

Looking to the second type of "automobile business exclusion" courts have generally held that accidents occurring while the owner's car is picked up, delivered, or moved fall within the meaning of the exclusionary clause. It follows that in such cases the owner's policy does *not* provide coverage. Wendt v. Wallace, 185 Minn. 189, 240 N.W. 470 (1932); Clostio's Heirs v. Sinclair Refining Co., 36 So.2d 283 (La.App.1948); Nationwide Mut. Ins. Co. v. Exchange Mut. Ins. Co., 49 Misc.2d 707, 268 N.Y.S.2d 495 (Sup.Ct.1966); Dixie Auto. Ins. Corp. v. Mason, 155 So.2d 172 (Fla.App.1963); Nat'l Farmers Union Property & Casualty Co. v. General Guaranty Ins. Co., 150 Mont. 297, 434 P.2d 708 (1967). *See*: 7 Appleman, *supra*, § 4372 (1962); Annotation 47 A.L.R.2d 556. *But see*: Exchange Casualty and Surety Co. v. Scott, 56 Cal.2d 613, 15 Cal.Rptr. 897, 364 P.2d 833 (1961).

We now examine the authorities construing the third type of "automobile business exclusion" clause. Respondent relies principally upon Dumas v. Hartford Accident Indemnity Company, 181 So.2d 841 (La. App.1965) *Dumas* appears to stand alone in support of the proposition that an accident occurring while a service station operator is delivering a car after service is *not* within the third type of "exclusion." Hence the court in *Dumas* found that the automobile owner's policy did provide coverage for the accident. We note, nevertheless that *Dumas* has recently been severely questioned in its own jurisdiction. Deville v. United States Fidelity and Guaranty Co., 258 So.2d 694 (La.App.1972). *Also compare*: Grace v. Armstrong, 266 So.2d 737 (La.App.1972).

■ In our judgment most cases interpreting this third type of automobile busi-

ness exclusion clause have concluded that accidents occurring while transporting an owner's car to or from a service shop are *not* covered by the owner's liability policy. *See*: Universal Underwriters Ins. Co. v. Pan American Insurance Co., 450 F.2d 1050 (5th Cir. 1971); Universal Underwriters Ins. Co. v. Northwestern Nat'l Ins. Co., 306 F.Supp. 437 (S.D.Ill.1969); Northern Assurance Co. v. Truck Ins. Exch., 151 Mont. 132, 439 P.2d 760 (1968).

A case closely in point to the facts in the case at bar appears to be Northwestern Nat'l Casualty Co. v. Safeco Ins. Co. of America, 121 Ga.App. 209, 173 S.E.2d 407 (1970). In *Northwestern* an owner took his car to an agency for service. An official of the agency directed an employee to accompany the owner to his place of employment in the owner's car. The employee was involved in an accident on his return trip to the agency. The owner's liability policy contained an automobile business exclusion of the third type stating that the policy would not apply when the insured car was "* * * *used by any person while such person is employed or otherwise engaged in the automobile business.*" Northwestern, as the agency's liability insurer, brought an action for declaratory judgment to determine whether the owner's liability carrier provided coverage for the accident. The trial court granted summary judgment in favor of the owner's insurance company, Safeco, and held that its policy did not afford coverage for the accident. The agency's insurer, Northwestern, appealed and the decision was affirmed. The Georgia court found that the automobile business exclusion in the Safeco policy was not ambiguous and stated:

"[1] In the present case, by substituting the definition of automobile business for the term as it appears in the exclusion clause, the clause, as applicable, reads as follows: '*This policy does not apply under the liability section to an owned automobile while used by any person while such person is employed or*

*otherwise engaged in the business or occupation of selling, repairing, servicing, storing, or parking automobiles.'* (Emphasis supplied.) The gist of the exclusion is thus *use by another while employed or otherwise engaged in the automobile business.* McKay, the owner, had relinquished possession and control of the vehicle to Pierce, who, as Park Chrysler-Plymouth's servant at the time was acting within the scope of his employment and obviously met the test of a person employed in the business or occupation of selling, repairing, servicing, storing, or parking automobiles, irrespective of the fact that he operated the automobile for the sole purpose of transporting it to Park Chrysler-Plymouth, as distinguished from actually working on or testing the vehicle.

"The lower court properly sustained Safeco's motion for summary judgment." (Emphasis in original.) 173 S.E.2d at 408.

We hold that the automobile business exclusion in Rea's AID policy excused AID from providing primary coverage for the accident in the instant case. The district court erred in granting summary judgment for CNA. The judgment is reversed and remanded to the district court for proceedings consistent with our ruling herein. Costs to appellant.

DONALDSON, C. J., and McQUADE, McFADDEN and BAKES, JJ., concur.