2003 WY 125

**In the Matter of the ESTATE OF John Henry KIRKPATRICK, Deceased.**

**Karen Shippey, Appellant (Petitioner),**

**v.**

**Carol Marafioti and Jean Lien, Appellees (Respondents).**

**No. 02–211.**

Supreme Court of Wyoming.

Oct. 1, 2003.

Representing Appellant: Kathleen B. Dixon of Murane & Bostwick, Casper, Wyoming; and Loyd E. Smith of Murane & Bostwick, Cheyenne, WY.

Representing Appellees: Drew A. Perkins of Perkins & Powers, P.C., Casper, WY.

Before HILL, C.J., and GOLDEN, LEHMAN, KITE, and VOIGT, JJ.

KITE, Justice.

[¶ 1]   Karen Shippey's uncle, who was adopted, died intestate, and the district court found his heirs included the descendants of both his adoptive and his biological siblings. Ms. Shippey claims an adopted child's biological siblings are no longer his "brother" and "sister" and, thus, they are not entitled to inherit from the adopted child's intestate estate. We agree and reverse.

## ISSUES

[¶ 2]   The question presented for appeal is whether biological siblings (and their descendants) of an adopted decedent may claim rights as heirs in intestacy.

## FACTS

[¶ 3]   The facts in this case are not in dispute. John Henry Kirkpatrick was born Gion Rosetti to Joseph and Beatrice Rosetti in 1914. He had ten siblings. On January 25, 1927, Edgar and Margaret Kirkpatrick adopted Gion and his brother, Leo Rosetti. The Kirkpatricks changed Gion's name to John Henry Kirkpatrick (John Kirkpatrick) and Leo's name to Edward Watson Kirkpatrick (Edward Kirkpatrick). The other nine birth siblings were either adopted away or remained with their birth parents. John Kirkpatrick was married briefly, divorced, and had no children. Edward Kirkpatrick married and, with his wife, raised a daughter, Ms. Shippey. John and Edward Kirkpatrick's nine biological siblings produced eight children (the cousins).

[¶ 4]   John Kirkpatrick died intestate on August 4, 2000, leaving a substantial estate consisting of stocks, bonds, real estate, and personal property. Rick Rogers and Ms. Shippey were appointed co-personal representatives of John Kirkpatrick's estate. The co-personal representatives filed a Verified Interim Accounting and Petition for Partial Distribution on July 19, 2001, asking the court to determine the proper heirs for distribution of the estate. Ms. Shippey, through her attorney, filed a brief asserting that John Kirkpatrick's adoption terminated the rights of any biological relative not adopted by his adoptive family, thus leaving Ms. Shippey as the sole heir. The cousins opposed this position, contending John Kirkpatrick's adoption had no effect on the biological siblings' right to inherit from him; thus, the cousins claimed their *per capita* share of the portion of the estate which would have been distributed to their parents.

[¶ 5]   The district court concluded that, in light of the pertinent caselaw and statutes, the cousins—the children of John Kirkpatrick's biological siblings—were entitled to the

share of the estate that would have been distributed to their parents. This appeal followed.

## STANDARD OF REVIEW

[¶ 6] The interpretation of statutory language is essential to our resolution of this case. The construction and interpretation of statutes are questions of law which we review *de novo. Powder River Coal Company v. Wyoming State Board of Equalization,* 2002 WY 5, ¶ 6, 38 P.3d 423, ¶ 6 (Wyo.2002); *Fosler v. Collins,* 13 P.3d 686, 688 (Wyo. 2000). Our objective is to interpret statutes in accordance with the legislature's intent. *Id.* We begin by making an inquiry respecting the ordinary and obvious meaning of the words employed according to their arrangement and connection. *Jones v. State Department of Health,* 2001 WY 28, ¶ 11, 18 P.3d 1189, ¶ 11 (Wyo.2001). We construe the statute as a whole, giving effect to every word, clause, and sentence, and we construe all parts of the statute *in pari materia. Wyoming Board of Outfitters and Professional Guides v. Clark,* 2001 WY 78, ¶ 12, 30 P.3d 36, ¶ 12 (Wyo.2001); *Fontaine v. Board of County Commissioners of Park County,* 4 P.3d 890, 894–95 (Wyo.2000); *Richards v. Board of County Commissioners of Sweetwater County,* 6 P.3d 1251, 1253 (Wyo.2000). In ascertaining the meaning of a given law, we consider all statutes relating to the same subject or having the same general purpose and construe them in harmony. *TOC v. TND (In re TLC),* 2002 WY 76, ¶ 20, 46 P.3d 863, ¶ 20 (Wyo.2002).

[¶ 7] When the Court determines, as a matter of law, that a statute is clear and unambiguous, it must give effect to the plain language of the statute and should not resort to the rules of statutory construction. *Sechrist v. State ex rel. Wyoming Workers' Safety and Compensation Division,* 2001 WY 45, ¶ 10, 23 P.3d 1138, ¶ 10 (Wyo.2001). If, on the other hand, the Court determines that a statute is ambiguous, it may use extrinsic aids of statutory interpretation to help it determine the legislature's intent. *Steele v. Neeman,* 6 P.3d 649, 653 (Wyo.2000); *Basin Electric Power Cooperative v. Bowen,* 979 P.2d 503, 506 (Wyo.1999).

It is a basic rule of statutory construction that courts may try to determine legislative intent by considering the type of statute being interpreted and what the legislature intended by the language used, viewed in light of the objects and purposes to be accomplished. Furthermore, when we are confronted with two possible but conflicting conclusions, we will choose the one most logically designed to cure the mischief or inequity that the legislature was attempting to accomplish.

*Collicott v. State ex rel. Wyoming Workers' Safety and Compensation Division,* 2001 WY 35, ¶ 9, 20 P.3d 1077, ¶ 9 (Wyo.2001) (citation omitted).

## DISCUSSION

[¶ 8] This dispute presents a clear but completely unsettled question of law. To answer the question, we must reconcile the Wyoming intestacy and adoption statutes as well as related caselaw.

[¶ 9] The district court decided in favor of the cousins, concluding that John Kirkpatrick's biological nephews and nieces were "entitled to the share that would have been distributed to their parents." In reaching that result, the court concluded (1) the adoption statutes which allow an adoptee to inherit from his biological parents should be interpreted to create mutuality by allowing the biological relatives to inherit from the adoptee; (2) the intestate statute's reference to "brother" and "sister" included biological siblings of an adopted child; and (3) *Randall v. Potter,* 506 P.2d 432 (Wyo.1973), required a holding that biological siblings could inherit from adopted siblings and was still controlling. While the district court's interpretation of Wyoming statutes and *Randall* was well written and thorough, it failed to consider the effect of substantive amendments to the statutes and to give full effect to the legislative intent that adoption terminates the parent-child relationship. The district court's imposition of mutuality reads language into the statute which is not there. The terms "brother" and "sister" in the intestacy statute must be read in light of the clear termination in the adoption statutes of the biologi-

cal family's legal relationship with the adopted child. The district court's conclusion that "close examination of the pertinent statutes in effect when *Randall* was decided and of those statutes that govern this case have little substantive differences" is inaccurate as we will discuss more thoroughly below.

## A. Interrelationship Between the Intestacy Statutes and the Adoption Statutes

[¶ 10] Wyo. Stat. Ann. §§ 2–4–101 and 2–4–107 (LexisNexis 2003) establish the rules of intestate succession and, specifically, those that apply to persons in an adoptive family. The pertinent parts are:

(a) Whenever any person having title to any real or personal property having the nature or legal character of real estate or personal estate undisposed of, and not otherwise limited by marriage settlement, dies intestate, the estate shall descend and be distributed in parcenary to his kindred, male and female, subject to the payment of his debts, in the following course and manner:

. . . .

(c) Except in cases above enumerated, the estate of any intestate shall descend and be distributed as follows:

. . . .

(ii) If there are no children, nor their descendents, then to his father, mother, brothers and sisters, and to the descendents of brothers and sisters who are dead, the descendents collectively taking the share which their parents would have taken if living, in equal parts[.]

Section 2–4–101.

(a) If for purposes of intestate succession, a relationship of parent and child shall be established to determine succession by, through or from a person:

(i) An adopted person is the child of an adopting parent *and of the natural parents for inheritance purposes only.* The adoption of a child by the spouse of a natural parent has no effect on the relationship between the child and that natural parent;

(ii) *An adopted person shall inherit from all other relatives of an adoptive parent as though he was the natural child of the adoptive parent and the relatives shall inherit from the adoptive persons estate as if they were his relatives* [.]

Section 2–4–107 (emphasis added).

[¶ 11] Section 2–4–107(a)(ii) explicitly establishes the adopted person inherits the same as any other member of the adoptive parent's family and provides mutuality by requiring the "relatives" of the adoptive parent shall inherit from the adopted person as well. In addressing the respective rights of the adopted person and the relatives of the adoptive parent, the legislature was silent on the inheritance rights of an adopted person's biological relatives. The adoption statutes, on the other hand, act to terminate the legal relationship between the biological parents and the adopted child. Wyo. Stat. Ann. §§ 1–22–114, 14–2–317 (LexisNexis 2003). When the legislature adopts a statute, we presume it does so with full knowledge of the existing state of the law with reference to the statute's subject matter. *Fosler*, 13 P.3d at 693. However, where a statute enumerates the subjects or things on which it is to operate, or the persons affected, we construe it as excluding from its effect all those subjects and things not expressly mentioned. *Town of Pine Bluffs v. State Board of Equalization*, 79 Wyo. 262, 333 P.2d 700 (1958). Each of these statutes is silent on the critical issue in this case. This gap in the statutory scheme was likely unintended. We are left with the difficult task of filling that gap, and, to do so, we read these statutes *in pari materia*. When read together, Wyoming's adoption statutes and intestacy statutes are unambiguous as to the question presented in this case.

[¶ 12] Since adoption was not considered at common law, we must strictly construe adoption statutes. *JK ex rel. DK v. MK*, 5 P.3d 782 (Wyo.2000). Strict construction of Wyoming's adoption statutes suggests that the legislature ultimately intended for adoption to sever all rights of the biological family members. Section 1–22–114 provides that "the former parent, guardian or putative

father of the child shall have no right ...." and "[t]he adopting persons shall have all the rights...." Siblings obtain their inheritance rights as a result of their relationship with their parents. If the former parents have no such rights, it logically follows that neither do the siblings because one is only a brother and/or a sister as a result of one's relationship to one's parents. When that parental relationship is terminated as a matter of law, so are the rights of biological siblings that derived from that relationship.

[¶ 13] Likewise, the intestacy statutes are to be strictly construed. *Fosler*, 13 P.3d at 692. Those statutes create inheritance rights in the decedent's sisters and brothers. Webster's Dictionary defines sister as "a female human being having the same parents as another person." Webster's Ninth New Collegiate Dictionary 1102 (1991). Similarly, Webster's defines brother as, "a male who has the same parents as another, or one parent in common with another." *Id.* at 182. In the case of an adoption, siblings, in the legal sense, are those within the adoptive family. Further, to determine what was intended when the legislature used the terms "brother" and "sister" in the intestacy statutes, we must first understand "mother" and "father." The gist of Wyo. Stat. Ann. § 14-2-501 (LexisNexis 2003) is this: a mother-child relationship is established by "adoption of the child"; similarly, a father-child relationship is also established by "adoption of the child." Thus, when referring to "mother" and "father," § 2-4-101 is plain and unambiguous in the context of adoption. "Mother" refers to the *adoptive* mother, who is given *all rights* by § 1-22-114. "Father" refers to the *adoptive* father, who is also given *all rights* by § 1-22-114.

[¶ 14] The only connection statutorily preserved between the biological family and the adopted child is the express right of the adopted child to inherit from his biological parents. Section 2-4-107(a)(i). However, this statute's plain and unambiguous language provides the adoptee remains a child of the biological parents *for inheritance purposes only.* The statute does not say the inheritance relationship is a two-way street or the biological parents remain the father and mother for inheritance or any other purpose. To that end, the strictest interpretation of § 2-4-107 is therefore unequivocally one-sided and does not establish mutuality.

[¶ 15] Carol Marafioti and Jean Lien contend in their appellees' brief "a brother is a brother, and a sister is a sister, even after adoption." However, the effect of the adoption decree changes the legal relationship between the adopted child and his biological family and between the adopted child and his adoptive family. Section 1-22-114 provides:

(a) Upon the entry of a final decree of adoption the former parent, guardian or putative father of the child shall have no right to the control or custody of the child. The adopting persons shall have *all of the rights* and obligations respecting the child as if they were natural parents.

(b) Adopted persons may assume the surname of the adoptive parent. They are entitled to the same rights of person and property *as children and heirs at law* of the persons who adopted them.

(Emphasis added).

[¶ 16] The adoption decree severs the relationship between the child and his biological parents and creates a new and exclusive parent-child relationship between the child and the adoptive parents. This Court has recognized the import of the severance from the biological parents and the new unity with the adoptive parents: "A decree of adoption tears asunder forever the parent-child relationship and for all legal and practical purposes, that child is the same as dead to the parent affected. The parent has lost the right to ever again see the child or even know of his whereabouts." *Voss v. Ralston,* 550 P.2d 481, 485 (Wyo.1976). A New York case extends this view logically:

Although there is nothing in the adoption law that says that rights between the adopted child and his natural brothers and sisters have been terminated or destroyed, nevertheless, when the natural parents relinquished their rights, the foundation or substructure which joined the blood relatives with the adopted child was removed. Therefore, natural blood relatives who must trace their relationship through a

natural parent *may not inherit or take from the adopted [child].*

*In re Accounting of Fodor (Estate of Adler),* 202 Misc. 1100, 117 N.Y.S.2d 331, 334 (N.Y. 1952) (emphasis added) (citations omitted).

When a child is given up for adoption, his natural parents have, in effect, destroyed the mythical cord which nature provided to bind them with the child, and the adoption has the effect of *excluding the natural parents and all the natural kindred and blood relatives of the child from inheriting from the adopted child.*

*Id.* at 333 (emphasis added) (citations omitted).

[¶ 17] The preceding cases are consistent with settled principles of Wyoming law regarding severing the legal relationship between adopted children and their biological parents. For instance, *Rist v. Taylor,* 955 P.2d 436 (Wyo.1998), states that a second adoption severs the child's previously existing rights of inheritance from his first adoptive parent. *JS v. FV (Adoption of RDS),* 787 P.2d 968, 970 (Wyo.1990) cut off the adopted child's relationship with his natural grandmother because it was "violative of public policy." Although the facts of *Rist* and *RDS* differ from those in this case, the principle of an adopted child being legally severed from the biological family has remained steadfast throughout our jurisprudence. An adopted child cannot live in limbo, nor can his adoptive or biological family, after the adoption is finalized. Moreover, to say that adoption severs previously existing rights of inheritance in some members of the biological family but not others would be against public policy. Adoption severs all rights of biological family members, including their right to inherit from the adopted child.

[¶ 18] We have long recognized adopted children's rights to inherit equally within their adoptive family. This Court, prior to any statute addressing the subject, found adopted children should be treated the same as biological children. *Moralee v. Cadwell,* 26 Wyo. 412, 186 P. 499 (1920) found that the adoptive brother and sister were at a minimum entitled to share equally with the decedent's biological sister. *Cadwell* quoted the Washington Supreme Court:

"One of the rights or privileges of a natural child is to inherit from a brother or sister, a natural son or daughter of the same parents. If the adopted child does not have the same right, then it is denied a right or privilege which the natural child has."

*Id.* at 501 (quoting *McManis v. Lloyd (Masterson's Estate),* 108 Wash.307, 183 P.93, 94 (1919)). *Cadwell* noted that the Washington court held an adopted sister was entitled to inherit along with the biological brothers and sisters of one dying without issue, a husband, a wife, a father, or a mother. *Id.* The quote from *McManis,* however, focuses on children (adopted and biological) within the same family. Both Washington and Wyoming, in *McManis* and *Cadwell,* take special care to treat equally the children within the same family.

[¶ 19] In the instant case, the children are from two different families. The Rosettis relinquished their rights as parents to the two boys and gave those rights to the Kirkpatricks. The adoption terminated the Rosettis' parent/child relationship with John and Edward Kirkpatrick. *Cadwell* further illuminates the definition of brother or sister. The specific language, "[o]ne of the rights and privileges of a natural child is to inherit from a brother or sister, a natural son or daughter of the same parents," explains that having the same parents is an inherent part of being a brother or a sister. *Cadwell,* 186 P. at 501. If that parent/child relationship is terminated by adoption and established in new, adoptive parents, the right to inherit is derived from the adoptive parents and flows down the family tree to the siblings who share the same parents in the eyes of the law.

[¶ 20] Finally, and perhaps most importantly, we must consider and clarify *Randall,* 506 P.2d 432. In that case, Mr. Randall died intestate, leaving an adoptive brother and sister and a biological sister. *Id.* at 432. The trial court determined that only the biological sister could inherit. This Court reversed, relying primarily on the Wyoming adoption statute then in place, which provided (as does today's statute) that adopted children have the same rights as biological

children. In analyzing *Randall,* the district court in the instant case concluded: "The distribution statute considered in *Randall,* although renumbered, has not been subsequently amended to a degree that would destroy the precedent established by the Wyoming Supreme Court in 1973." However, the court overlooked an important detail. The *Randall* court interpreted the statutes as they existed at the date of decedent's death:

§ 2–37, W.S.1957:

"... the estate of any intestate shall descend and be distributed as follows: "2. If there be no children, nor their descendants, then to his father, mother, brothers and sisters, and to the descendants of brothers and sisters who are dead (the descendants, collectively, taking the share which their parents would have taken if living), in equal parts;"

and § 1–721, W.S.1957:

"Minor children, adopted as aforesaid, shall assume the surname of the persons by whom they are adopted, and shall be entitled to the same rights of person and property as children or heirs-at-law of the persons thus adopting them, unless the rights of property should be excepted in the agreement of adoption."

*Id.* at 433 (footnote omitted).

[¶ 21] Because "rights of inheritance vest immediately on the death of intestate and devolutionary rights must be determined in relation to the date," *id.* at 433 n. 1, and Mr. Randall died in 1966, the *Randall* court was precluded from considering a 1969 amendment to § 1–721. *Park County ex rel. Park County Welfare Department v. Blackburn,* 394 P.2d 793, 794 (Wyo.1964). The 1969 amendment read: "Provided further that adopted persons shall inherit from all other relatives of the adoptive parents as though they were the natural children of such parents and *the relatives shall inherit from the adopted [persons'] estate as if they*

*were their relatives in fact." Randall,* 506 P.2d at 433 n. 2 (emphasis added).[1] This statute established inheritance mutuality within the adoptive family *only.* The legislature chose to say nothing about the biological family members' inheritance rights surviving adoption. Since those rights are purely statutory, the legislature's silence must be interpreted as intending to create no such rights. Had Mr. Randall died *after* the 1969 amendment, we believe strict construction of the statutes would have mandated a different result.[2] Also, the *Randall* court did not directly address the question presented in this case: Whether biological siblings outside of the adoptive family are entitled to inherit from an adopted sibling.

### B. Other Jurisdictions' Caselaw

[¶ 22] Statutes vary among the states as to adoption and intestacy, and this Court is mindful of that when looking to other states for guidance. That said, cases from other jurisdictions support our holding in this case. *Goulart v. Amaral,* 222 Cal.App.2d 808, 35 Cal.Rptr. 465, 475 (1963) (the kindred of an adopted person are its adoptive relatives, not its biological ones); *Penalver v. Howell (Estate of Jones),* 687 So.2d 1171, 1176 (Miss. 1996) (biological siblings of an adopted child cannot inherit from the adopted child).[3]

[¶ 23] Two cases with similar facts provide this Court with further support. *Wright v. Wysowatcky,* 147 Colo. 317, 363 P.2d 1046 (1961), found that, when an adopted child dies intestate, an adoptive father has the sole right to inherit and the child's biological siblings have no right whatsoever to his estate. Similarly, in *Marnell v. Koser (Estate of Enyart),* 116 Neb. 450, 218 N.W. 89 (1928), Mr. Enyart, an adopted son, died intestate without widow or issue. His biological father claimed to be his sole heir and entitled to inherit. However, his adoptive mother also claimed the right to inherit. Judgment in

---

1. Now Wyo. Stat. Ann. § 2–4–107 (LexisNexis 2003).

2. A review of the record in *Randall,* which was unavailable to the district court herein, discloses that the parties recognized the significance of the statutory amendment and the possibility that the

result would have been different had the amended statute applied.

3. This is not intended to be an exhaustive review of states that support our holding in the instant case.

the trial court favored the adoptive mother. That court said:

> [T]his court has heretofore held that the adopted child inherits from the adoptive parent. But the right conferred by statute is a reciprocal one, because it depends upon a relation that is created by the adoption under our statute. The relation of parent and child having been thus created the right of the adoptive parent to inherit is the same as was or would have been that of the natural parent. The natural parent consented to the establishment of this relation. By his formal act, he consented that another should step into his place and, in legal effect, become the parent of his child, and thereby consented that such other person should have all the right which he, himself, but for the adoption, would have had. By his own voluntary act, Koser transferred from himself to Katherine Enyart the right of a parent to inherit from the adopted child, Logan Enyart.

*Id.* at 91 (citations omitted).

[¶ 24] This Court agrees wholeheartedly with *Wright* and *Marnell.* An adopted child is for *all purposes* the child of his adopters.[4]

[¶ 25] In a different context, other jurisdictions have held statutes granting rights to "brothers and sisters" do not include, either by express provision or by construction, biological siblings of an adopted child. In *Wasley v. Brown,* 193 F.Supp. 55 (D.C.Va.1961), the court held that, where a child was lawfully adopted by an order entered by the State of Colorado, his biological sibling lost the right to participate in an award after his death under the Virginia wrongful death statute because, at the time of the death, the biological brother was no longer considered, under Virginia law, the decedent's legal "brother." The Mississippi Supreme Court held that only adoptive brothers and sisters could sue, where wrongful death and adoption statutes made clear, that adopting parents and kindred took over all legal rights of natural family. *McLemore v. Gammon,* 468 So.2d 84 (Miss.1985).

## C. Public Policy

[¶ 26] Public policy supports our interpretation of these statutes and caselaw.[5] Without complete separation of the biological family and the adoptive family, probating an adopted child's estate would become rife with problems. Moreover, already probated estates could be subject to challenge by previously unidentified biological relatives laying claim to the intestate estate. Ultimately, a probate involving an adopted person could never be fully closed without full identification of the biological relatives. The only way a probate court could ethically fulfill its duties would be to first determine whether an intestate decedent was adopted and, if so, obtain a review of the adoption records. However, adoption records are traditionally sealed to insure the confidential and final nature of an adoption. Wyo. Stat. Ann. § 1–22–104(d) (LexisNexis 2003) provides a court may order inspection of all or part of the confidential file in adoption proceedings only if it appears to the court that the welfare and best interests of the child will be served by the inspection. Under Wyo. Stat. Ann. § 1–22–203(b) (LexisNexis 2003), only an "adult adoptee, adoptive parent, biological sibling or biological grandparent who is eighteen (18) years of age or older may file a motion" to

---

4. After this issue was raised in the court system, some state legislatures reacted to clarify adoption and intestacy statutes to exclude entirely biological relatives. For instance, the California Probate Code was amended in 1955, soon after a decision in direct contravention with the amended statute (*Oreb v. Pettit (Estate of Calhoun)*, 44 Cal.2d 378, 282 P.2d 880 (1955)). A case note commented on the significance of the decision to amend: "providing for a complete substitution, the legislature created that system of distribution which is most likely to coincide with the intent of adopted children and is most consistent with the objective of having an adoption simulate the natural relationship as closely as possible." Allen I.

Neiman, Note, 29 So. Cal. L.Rev. 126, 128 (1955).

5. Section 2–4–107(a)(i), which preserves the adopted child's right to inherit from his biological parents, is an anomaly when viewed in the context of the adoption statutes and places Wyoming in the minority on this issue. We respectfully suggest the legislature consider amending § 2–4–107(a)(i) to make it consistent with a complete termination of the legal relationship between the biological parents and the adopted child, which we perceive was intended by the adoption statutes.

have the adoption records investigated "for the purpose of determining the whereabouts of the unknown biological relative or relatives." An Iowa law review article elaborates on the problems which could be created by allowing an adoptee's biological relatives to inherit:

> Allowing adoptees to inherit from birth parents and kindred would breach confidentialities created to protect the adoptive parents. Adoption record confidentiality furthers "the objective of effecting a complete emotional break" between adoptee and birth parents. Even if confidentiality were not a problem, locating an adoptee at the time of a birth parent's death would prove very difficult. If heirs cannot be located, then estates remain open for a long time, which undermines the goal of settling estates quickly.·

Hallie E. Still–Caris, *Legislative Reform: Redefining the Parent–Child Relationship in Cases of Adoption*, 71 Iowa L.Rev. 265, 275 n. 89 (1985).

[¶ 27] The Wyoming legislative intent as to adoption records is obvious. They are to be sealed unless the best interest of the child is at stake or unless an adoptive or biological family member desires to know the whereabouts of unknown biological relative(s). Inspection is allowed only in the strictest of circumstances.

[¶ 28] A further policy concern focuses on the adopted decedent's likely intent. We have recognized the intestacy statutes' general intent is to give effect to what a decedent likely intended with regard to his estate. *Fosler*, 13 P.3d at 693. "The general purpose of intestacy statutes is to distribute a decedent's estate upon their death in a pattern that would closely represent the distribution the decedent would have chosen had he manifested his intent through the use of a will." Samuel B. Shumway, *The Dual Generation Dilemma—Wyoming's Interpretation of its 130–Year–Old Intestacy Statute*, 2 Wyo. L.Rev. 631, 652 n. 61 (2002). It is difficult to conceive that a typical adopted child would intend for its biological siblings,

and their relatives, to inherit from him when those siblings are, in most cases, unknown.[6]

## CONCLUSION

[¶ 29] An adopted child's biological family members have no right to inherit from the adopted child under Wyoming's intestacy statutes. Therefore, we reverse the district court's decision and hold John Kirkpatrick's sole legal heir is Karen Shippey.

---

**6.** While we recognize some adopted persons have a relationship with their biological family, as did John Kirkpatrick, many do not, and the biological siblings remain unidentified.