406 P.2d 696

I. Whitney SMITH, Plaintiff-Appellant,

v.

The IDAHO HOSPITAL SERVICE, INC., an Idaho Corporation, d/b/a Blue Cross of Idaho, Defendant-Respondent.

No. 9704.

Supreme Court of Idaho.

Oct. 13, 1965.

Jack G. Voshell, Idaho Falls, for appellant.

Moffatt, Thomas, Barrett & Blanton, Boise, for respondent.

KNUDSON, Justice.

Appellant commenced this action seeking to recover from respondent, a hospital and medical service corporation, benefits allegedly payable under a subscriber's certificate issued by respondent. The basic facts were stipulated by the parties as follows:

Appellant, together with each member of his family living in his household, including his stepdaughter, Linda Gay Fuller, a minor, was on April 16, 1963, a subscriber under a certificate issued by respondent and in force on that date, under which certain benefits for hospitalization, surgery and ambulance service were provided for them. The certificate also contained the following provisions under Article II entitled "Limitations and Exclusions," to-wit:

"A. Services and Benefits Not Included

Idaho Blue Cross shall not be required to furnish any services or benefits under this certificate for * * * (5) any injury growing out of a wrongful act or omission of another party for which injury that party or some other party makes settlement or is legally responsible; provided, however, that if the subscriber or family member is unable to recover from the responsible third party after exercising legal rights so to do, the subscriber or family member shall be entitled to the benefits of this Certificate and any endorsements thereto as if no third party liability were involved; * * *"

On April 16, 1963 Linda Gay Fuller was injured as a result of an accident and certain expenses for hospitalization, surgery and ambulance services were incurred as a result thereof. Although the total of such expenses exceeded $2,600.00, it was agreed that the maximum amount payable under the certificate involved was $2,087.-05.

Following receipt of notice of the accident and injury, respondent forwarded to appellant a document designated as "Blue Cross Accidental Injury Questionnaire" which appellant and his attorney completed and returned to respondent. One of the questions contained in the questionnaire was, "Do you intend to make claim against anyone for damages?" to which appellant answered, "Yes." Respondent thereafter denied any obligation to make payment under the certificate until the status of the third party's liability was determined in accordance with the provisions of the foregoing quoted exclusion clause. Respondent did offer to make payment of the benefits provided under the certificate upon the execution by appellant of an assignment

sufficient to cover its liability which was submitted by respondent. Appellant declined to execute such assignment and commenced this action to recover the sum of $2,087.05 together with attorney's fees.

———◆———

Thereafter and on May 31, 1963 appellant and the guardian ad litem for Linda Gay Fuller filed an action against the Idaho Falls Class A School District No. 91, et al., hereinafter referred to as civil case No. 13139. In said action damages were sought for personal injuries sustained by the minor as a result of the accident which occurred on April 16, 1963 together with hospital and medical expenses necessarily incurred as a result of such injuries. A compromise settlement between the parties to civil case No. 13139 was later effected whereby the defendants therein made payment to the plaintiffs therein of the sum of $28,100.00. In exchange for this payment plaintiffs executed a release of all claims and dismissed the action with prejudice. The settlement became effective and the action was dismissed on February 11, 1965.

In the instant action the parties have stipulated that in the event of a recovery by appellant the sum of $500.00 would be a reasonable allowance as attorney's fees. Respondent denies liability in any amount.

It was stipulated that the only issues presented to the trial court for determination were:

"1. Whether the exclusion contained in Exhibit No. 1 under Article II(5) is valid as the same applies in this case.

"2. Whether the plaintiff is entitled to attorney's fees in this case."

The case was submitted to the trial court upon the stipulated facts and the court found the challenged exclusion clause to be valid and that it excluded from coverage under the certificate involved, the amount claimed by appellant. The court also found that appellant's claim for attorney's fees was not allowable. Judgment was entered in favor of respondent and this appeal is taken from said judgment.

Appellant's assignments of error basically present a contention that the trial court erred in finding the exclusion clause, hereinbefore quoted, to be a valid and enforceable provision of the certificate involved.

We shall first consider appellant's contention that the effect of the exclusion clause is contrary to public policy. Appellant cites cases wherein it is held that an insurance company can limit its liability in any reasonable manner but not such as will contravene public policy and that, if a contract is void as against public policy, the court will not enforce it. However, no case is cited wherein it has been held that

an exclusion clause comparable to the one here in issue is in contravention of public policy.

These parties have stipulated that respondent is a service corporation organized and doing business under the provisions of title 41 chapter 34, Idaho Code. The Purpose of this chapter and the interpretation to be given it is stated in I.C. § 41–3402 as follows:

"(1) It is the purpose of this chapter to regulate in the public interest the formation and operation of prepaid health care service organizations, in order that such services may be made available upon a basis of fair and equitable contracts through state-licensed nonprofit organizations meeting reasonable standards as to administration, reserves, and financial soundness.

"(2) The provisions of this chapter shall be liberally interpreted to effectuate the purpose hereinabove declared."

Although appellant comments regarding the method employed by respondent in accomplishing the modification of the certificate to contain the exclusionary clause involved, there is no allegation or supporting proof that it was the result of any overreaching, fraud, or misrepresentation on the part of respondent. Nor is there any contention that respondent was without right to amend the certificate.

It is well settled that contracts of this nature are governed by the statutory and decisional law in force at the time the contract is entered into and the law becomes a part of it. Ford v. City of Caldwell, 79 Idaho 499, 321 P.2d 589; Interinsurance Exch. of Auto. Club v. Ohio Cas. Ins. Co. (1962), 58 Cal.2d 142, 23 Cal.Rptr. 592, 373 P.2d 640. It is clear from the language used in the statute specifying terms and conditions of a subscriber's contract that exceptions and exclusions therein are contemplated. I.C. § 41–3417 contains inter alia the following:

"(4) All exceptions and exclusions in the contract shall be printed and otherwise set forth as prominently as the services or benefits to which they apply."

In support of appellant's contention he argues that, under certain circumstances in which a subscriber might find himself, the effect of the exclusion clause would be contrary to public policy. We adhere to the rule that the question whether a contract is against public policy must be determined by its purport and tendency; however, in its application the court must be guided by practical considerations. What may or might be done theoretically will not be considered as controlling unless in actual practice it is a reasonable probability.

Appellant also argues that the effect of the exclusionary clause is to grant respond-

ent a right to deny, or at least indefinitely delay, benefits which are made the subject of the contract; that by involving third party liability respondent could, with or without just cause, insist that the subscriber exhaust all possible means of recovery from the third party before the subscriber could realize the benefit for which the premium was paid.

The only circumstance experienced by appellant and cited as supporting this contention is the fact that nearly two years intervened between the date of injury and a final determination of respondent's liability. The record discloses that the action against the alleged tort feasor was commenced during the month following the accident and injury. The cause of delay in determining the liability is not disclosed. Surely respondent cannot be blamed for delays over which it had no control.

In discussing provisions of the type here being considered it is stated in 81 A.L.R.2d 936–937, that "since hospital and medical care service plans are ordinarily organized so as to make such services available at a reasonable cost to persons who might otherwise be unable to bear the financial burden of illness, contracts issued by such plans typically provide that coverage will not be extended when the subscriber's or member's medical expenses are payable from some source other than the subscriber's own resources. Especially common are provisions limiting or excluding coverage where the injury or illness and attendant medical expense are covered by workmen's compensation, and the courts, in construing these provisions, have usually given effect to the evident intention to restrict coverage to situations where the member is not otherwise protected."

Each case wherein it is contended that the contract involved is void as being against public policy must necessarily depend upon its own facts and circumstances, and analogous cases involving the same general principles may be looked to by the court in arriving at a satisfactory conclusion. Stearns v. Williams, 72 Idaho 276, 240 P.2d 833.

In Barmeier v. Oregon Physicians' Service (1952), 194 Or. 659, 243 P.2d 1053, the court had under consideration the same general principles as are here involved and a contract containing an exclusion clause essentially the same as we are considering. The plaintiff in that action entered into a contract with the defendant whereby the defendant agreed to procure and make available to plaintiff, with certain exclusions and limitations, the necessary medical and surgical services required by her by reason of illness or nonoccupational injury, one of the exclusions and limitations being stated as follows:

"'13(f). The benefits of this contract do not apply to any injury or ill-

ness of the member caused by the negligence or wrongful act of any other person, except to the extent that if the member entitled to the benefits of this contract shall be injured, or shall suffer illness, because of the wrongful act or negligence of any other person and thereafter shall make all reasonable efforts to recover from such other person and anyone responsible or answerable for such other person's negligence or wrongful act, O.P.S. will procure for the member the benefits of this contract which cannot be made available out of funds reasonably recoverable from, or through, such other person. Such funds shall be deemed not reasonably recoverable from, or through, such other person if it shall reasonably appear that should an action therefor be prosecuted, and judgment therefor be obtained, against such person and anyone responsible or answerable for such other person's negligence or wrongful act, execution on such judgment would be unavailing.' "

The plaintiff in that action was injured in an automobile accident which occurred May 27, 1948. As a result substantial expenses for medical and hospital care were incurred. However the issue of liability on the part of O.P.S. was not determined until April 30, 1952. In upholding the ex-

clusionary clause the court stated that "[t]here being no statutory provisions preventing them, the parties to the contract had the right to limit the liability of O.P.S. and place upon its obligations any conditions that they pleased."

Appellant also contends that the exclusionary clause is ambiguous. A like contention was urged in the Barmeier case, and in its discussion of such claim the court stated:

"There is an ambiguity apparent in the contract. The ambiguity lies in the fact that *what* the member is to make all reasonable efforts to recover is not expressly stated. To resolve the ambiguity, we must seek to interpret the language used by applying thereto the rules for the interpretation of integrated contracts. One of the pertinent rules is that the writing must be interpreted as a whole. [citing cases] Applying this rule, we find that the contract reads that O.P.S. is responsible, in such cases, only to provide for the member those benefits of the contract 'which cannot be made available out of funds reasonably recoverable' from or through the tort feasor. Our interpretation of this language is that the obligation assumed by the member is that, before he may require O.P.S. to furnish him with the benefits of the contract under circumstances of

**506**

negligent third party responsibility for his injuries, he must use all reasonable efforts to recover from the tort feasor such amount of money as may reasonably be recoverable to defray his necessary medical and hospital expenses in that regard. When he has used all such reasonable efforts, O.P.S. becomes obligated to provide for him the benefits of the contract to the extent that these cannot be made available from the funds, if any, reasonably recoverable (which, of course, includes funds actually recovered) from the tort feasor. If no funds are reasonably recoverable, or recovered (the member having used all reasonable efforts to that end), then O.P.S. must procure for him all the benefits of the contract."

 The certificate involved must be construed as any other contract, in accordance with its general scope and the intention of the parties. This contract expressly limits the obligation of respondent to provide the benefits here in controversy only as are not made available from funds reasonably recoverable from a negligent third party. Appellant clearly obligated himself to make all reasonable efforts to recover the expenses here involved from the negligent third party. It was an express condition of his contract and he did in fact recover it from the tort feasor. The court is not warranted in ignoring this condition by construction or arbitrary disregard of the terms of the contract.

The judgment of the trial court is affirmed.

Costs to respondent.

McQUADE, C. J., and McFADDEN, TAYLOR and SMITH, JJ., concur.