533 P.2d 737

**Randolph CORGATELLI, Plaintiff-Appellant,**

v.

**GLOBE LIFE & ACCIDENT INSURANCE COMPANY, Defendant-Respondent.**

No. 11513.

Supreme Court of Idaho.

Jan. 28, 1975.

---

Eugene L. Bush, Sharp, Anderson & Bush, Idaho Falls, for plaintiff-appellant.

John D. Hansen, Hansen & Boyle, Idaho Falls, for defendant-respondent.

SHEPARD, Justice.

This is an appeal from a decision of the district court reversing a judgment of the magistrate's division on a claim under an insurance contract and remanding the matter for further proceedings in the magistrate court. We in turn reverse the decision of the district court and add to the body of Idaho law the so-called "doctrine of reasonable expectations" in litigation involving interpretation of insurance contracts.

Plaintiff-appellant Randolph Corgatelli was a part-time rodeo performer and a member of an association made up of such performers. That association sanctioned the activities of agents of defendant-respondent Globe Life and Accident Insurance Company in selling what is styled an "accident insurance policy" to members of the association. Upon being solicited Corgatelli purchased such a policy in May 1971.

The insuring clause of that policy provided:

"[G]lobe' hereby insures the applicant * * * subject to the terms, provisions and limitations of this policy, against (1) loss of life, limb, or sight or (2) specific injury, resulting directly and independently of all other causes from accidental bodily injury * * *."

Thereafter a schedule of benefits was set forth in Part 2 of the policy, stating:

"If the Insured shall sustain an accidental bodily injury occurring while this policy is in effect as to such person,

which shall directly and independently of all other causes and within thirty days from the date of such accident result in any of the following losses or conditions and is so diagnosed by a licensed physician, the Company will pay the amount specified in the schedule below:

[Amounts payable for loss of eye or limb]

"For Complete Dislocation of:

| | |
|---|---|
| Hip Joint | $1,200.00 |
| Knee Joint (except Patella) | $ 600.00 |
| Bone or Bones of the Foot, other than Toes | $ 600.00 |
| Ankle Joint | $ 600.00 |
| Wrist Joint | $ 500.00 |
| Elbow Joint | $ 400.00 |
| Shoulder Joint | $ 300.00 |
| Bone or Bones of the Hand, other than fingers | $ 200.00 |
| Collar Bone | $ 200.00 |
| Two or More Fingers | $ 100.00 |
| Two or More Toes | $ 100.00 |
| One Finger | $ 50.00 |
| One Toe | $ 50.00 |

"For Complete Simple or Closed Fracture of Bone or Bones of:

| | |
|---|---|
| Skull (except bones of face or nose) both tables | $1,300.00 |
| Hip-Thigh (Femur) | $1,200.00 |
| Pelvis (except Coccyx) | $1,000.00 |
| Arm between shoulder and elbow shaft | $ 800.00 |
| Shoulder Blade (Scapula) | $ 800.00 |
| Leg (Tibia or Fibula) | $ 800.00 |
| Ankle | $ 600.00 |
| Knee Cap (Patella) | $ 600.00 |
| Collar Bone (Clavicle) | $ 600.00 |
| Forearm (Radius or Ulna) | $ 600.00 |
| Foot (except Toes) | $ 500.00 |
| Hand or Wrist (except Fingers) | $ 500.00 |
| Lower Jaw (except Alveolar Process) | $ 300.00 |
| Two or More Ribs, Fingers or Toes | $ 200.00 |
| Bones of Face or Nose | $ 200.00 |
| One Rib, Finger or Toe | $ 100.00 |
| Coccyx | $ 100.00 |

"For Complete Open or Compound Fracture the Amount Payable will be One and One-Half Times the Amount Payable for Simple Fracture.

"For an Open Operation with Bone Grafting or Metallic Fixation at Point of Fracture the Amount Payable will be Twice the Amount Payable for Simple Fracture.

"Only one of the amounts, the largest, named in this Part 2 will be paid for losses due to any one accident and shall be in lieu of all other benefits under this policy."

While participating in a rodeo in June 1971 Corgatelli boarded an ill-tempered Brahma bull. He was promptly bucked off, injuring his right shoulder. That injury was diagnosed as an "acromioclavicular separation" of the right shoulder. As is common in such injuries treatment required open surgery and the insertion of metal fixation.

Corgatelli filed a claim with Globe and was tendered a check for $57.14, the amount allegedly representing two-sevenths of the weekly benefit payable for unspecified injuries that required hospitalization. Corgatelli then made a written demand upon Globe for $1,200 contending that amount was due under the policy for an injury to the collar bone where open surgery with metallic fixation was required. Globe refused that demand and Corgatelli instituted this action. Following trial in the magistrate's division a decision was entered awarding Corgatelli $1,200, plus $750 attorney fees. The basis for that decision appears to have been that the insurance contract contained an ambiguity to be resolved against the insurer.

Upon appeal to the district court it was again recognized that there was a patent ambiguity in the policy since a collar *bone* could not be "dislocated." The district court believed the only question to be whether Corgatelli should be reimbursed for dislocation of his shoulder joint ($300) or for "dislocation of his collar bone" ($200). The district court remanded the case for resolution of that question and for

a redetermination of appropriate attorney fees. This appeal resulted.

██ Corgatelli urges, and we agree, that the so-called "doctrine of reasonable expectations" (alias the doctrine of adhesion contracts) should be adopted in Idaho.[1] That doctrine was articulated in the case of Gray v. Zurich Insurance Company, 65 Cal.2d 263, 54 Cal.Rptr. 104, 419 P.2d 168 (1966). *Gray* involved the duty of an insurer under a personal liability policy to defend the insured against personal injury or property damage lawsuits. That court held that any exception to the basic underlying *obligation of the insurer* must be set forth in such a manner that the insured is clearly informed of its import. The court stated:

> "These principles of interpretation . . . have found . . . restatement in the doctrine of the adhesion contract . . . [A] contract entered into between two parties of unequal bargaining strength, expressed in the language of a standardized contract, written by the more powerful bargainer to meet its own needs, and offered to the weaker party on a 'take it or leave it basis' carries some consequences that extend beyond orthodox implications. Obligations arising from such a contract inure not alone from the consensual transaction but from the relationship of the parties.

> "Although courts have long followed the basic precept that they would look to the words of the contract to find the meaning which the parties expected from them, they have also applied the doctrine of the adhesion contract to insurance policies, holding that in view of the disparate bargaining status of the parties we must ascertain that meaning of the contract which the insured would reasonably expect." 419 P.2d at 171–172 (footnotes omitted).

██ Thereafter, and perhaps unfortunately, the *Gray* decision discusses at length the ambiguities found in the insurance policy. While ambiguities may be highly relevant in determining the reasonable expectations of an insured, nevertheless we deem it clear that the invocation and application of the doctrine of reasonable expectations does not depend for its existence upon the presence of ambiguities. See R. Keeton, Insurance Law Rights at Variance with Policy Provisions, 83 Harv.L.Rev. 961 (1970).

The doctrine of reasonable expectations proceeds from an acceptance of the fact that most insurance policies are contracts of adhesion. Ordinarily there can be no bargaining over the terms of the contract. The buyer either accepts the policy as written or turns elsewhere where he will usually be confronted with the same dilemma resulting from the same terminology. If the layman actually studies the contract he usually becomes bewildered and/or uncertain as to the terminology. He expects that he will be generally insured and does not anticipate these expectations will be upset by an artfully drawn clause that he will be unable to detect or, in the event detected, will be powerless to modify. Indeed, this court can take notice that usually an insured never sees his policy until after he has paid his premium and the contract has been formed. In Idaho, as in most states, the consuming public and the public interest is to be guarded by a state insurance commissioner. The policy in question herein is an example that the efforts of the state authority have at times fallen short of adequately discharging that responsibility.

██ Globe asserts that most of the cases cited by Corgatelli involve, as did *Gray*, the application of the doctrine of reasonable expectations to cases involving an in-

---

1. As will be discovered at the conclusion of this opinion, the usage of the word "we" is a matter of literary license. It must remain to the reader and perhaps the commentators to determine if the doctrine of reasonable expectations has clearly been adopted or how many adhere to the theory of adhesion.

surer's **duty** to defend lawsuits brought against **the** insured. If the doctrine of reasonable expectations has validity, logic and reason to its credit, the scope of the doctrine cannot be so narrow, for its theory is relevant to insurance contracts regardless of whether the question posed is the amount of coverage or coverage itself. In the case at bar the fact that Globe admits that Corgatelli's injury was "covered" to the extent of $57.14 should hardly preclude this court from applying the doctrine and determining what coverage could reasonably have been expected.

Today we adopt the doctrine of reasonable expectations and hold that an ambiguity in the policy is not a prerequisite for the invocation of the doctrine. Consideration of the terms of an insurance contract will continue since they will most often be a critical element in determining the reasonable expectations of the insured.

■ Applying the doctrine of reasonable expectations to the case at bar, an insured would reasonably believe that the policy sets forth a list of injuries for which, if incurred, the insured would be paid fixed sums. We doubt a reasonable person would note the absence of "acromioclavicular joint" from what appears to be an inclusive list of joints. If one did notice that "shoulder separation" (the popular terminology for the instant injury) was omitted from the schedule he might reasonably expect coverage under "shoulder joint" or possibly "collar bone." As noted, both the magistrate and the district judge concluded that such terms raised an ambiguity. A physician, the only expert witness, testified that Corgatelli's injury was not exactly described in Part 2 because on one hand the dislocation was of the acromioclavicular joint rather than the shoulder joint, and on the other hand joints rather than bones are dislocated and thus there could be no dislocation of the collar bone. Reverting to the maxim that ambiguities in insurance policies are to be resolved in favor of the insured, Abbie Uriguen Oldsmobile Buick, Inc., v. United States Fire Ins. Co., 95 Idaho 501, 511 P.2d 783 (1973); Medical-Dental Service, Inc. v. Boroo, 92 Idaho 328, 442 P.2d 738 (1968), we hold that Corgatelli may recover at least $300 pursuant to the "shoulder joint" benefit of Part 2. While under precise medical terminology he did not suffer a dislocation of the actual shoulder joint, nor did he suffer a dislocated collar bone, coverage was reasonably to have been expected under Part 2 of the policy, and more particularly, under one of these two described injuries. Having created the uncertainty the insurance company will be bound by the construction of the policy most favorable to the insured.

■ Corgatelli also argues that he should be allowed recovery for the double benefit payable for an open operation with metallic fixation. That portion of the policy declares "For an Open Operation with Bone Grafting or Metallic Fixation at Point of Fracture the Amount Payable will be Twice the Amount Payable for a Simple Fracture." It may be argued that this provision contains an ambiguity. Nevertheless it is more logical to say that the provision is so drafted as to create a reasonable expectation of double compensation when an insured's injury requires an open operation with metallic fixation. We deem it reasonable that only following a rejection of a claim would an insured determine that he will not be doubly paid because the company contends that the policy is drafted to permit double recovery only in the event of a fracture. This may be difficult for an insured to comprehend and it is difficult for this court to comprehend in view of the medical testimony that such procedures are required for cases involving injuries other than fractures. Particularly is it certain since medical testimony in the record indicates that an open operation with metallic fixation is the standard medical procedure to reduce a shoulder separation but is not the usual procedure in reducing a fracture of the collar bone.

The doctrine of reasonable expectations is peculiarly applicable to contracts where

as here it is drawn in such a fashion that one hand steals away what the other seemingly confers. A close analysis of the literal meaning of the words in the provision in question solves none of the problems since the literal language is at odds with the reasonable expectations an insured would obtain from the contract.

We cannot travel as far down the path as desired by Corgatelli. He demands he be paid $1,200, twice the $600 benefit payable for *a fractured collar bone*. It is clear that no fracture was involved and an insured could not reasonably have expected such compensation. Since the injury was a "dislocation" Corgatelli will recover only the benefits payable for a "dislocation" of the "shoulder joint" $300, which will be doubled in amount because of the necessitated open surgery with metallic fixation.

Counsel have stipulated that in the event appellant prevails upon the appeal this court shall award reasonable attorney fees. The magistrate's award of $750 attorney fees is reinstated, and since the proceedings in the district court were had upon the previously made record, appellant is awarded the sum of $500 attorney fees for proceedings in the district court. Appellant is further awarded the sum of $1,500 attorney fees upon appeal.

The decision of the district court is reversed, with instructions that judgment be entered in favor of appellant in accordance with this opinion. Costs to appellant.

McQUADE, C. J., and BAKES, JJ., concur in the conclusion.

DONALDSON, Justice (dissenting).

It appears to me that the majority opinion in its haste to adopt a new doctrine in interpretation of insurance contracts has forgotten or overlooked certain basic principles involved in construing contracts and it is therefore necessary to make a quick review of the principles.

The purpose of interpretation or construction of a contract is to determine the intent of the parties, as expressed in writing, so that it may be given effect. To ascertain the intent of the parties to an insurance agreement, the Court must first look to the contract itself, construing the document as a whole. Parma Seed, Inc. v. General Ins. Co. of America, 94 Idaho 658, 662, 496 P.2d 281 (1972); Watkins v. Federal Life Ins. Co., 54 Idaho 174, 178, 29 P.2d 1007 (1934). If the language is dispositive of intent, the Court need not revert to extrinsic evidence. Parma Seed, Inc. v. General Ins. Co. of America, *supra*. Indeed, in the absence of ambiguity, contracts for insurance must be construed as any other and understood in their plain, ordinary and proper sense, according to meaning derived from the plain wording of the contract. Continental National Am. Group v. Allied Mutual Ins. Co., 95 Idaho 251, 253, 506 P.2d 478 (1973); Lively v. City of Blackfoot, 91 Idaho 80, 83, 416 P.2d 27 (1966); Smith v. Idaho Hospital Service, Inc., 89 Idaho 499, 506, 406 P.2d 696 (1965); Evans v. Continental Life & Acc. Co., 88 Idaho 254, 257, 398 P.2d 646 (1965); Thomas v. Farm Bureau Mutual Ins. Co. of Idaho, Inc., 82 Idaho 314, 318, 353 P.2d 776 (1960).

If the language is susceptible to but one meaning, it must be given effect, for a court cannot by construction create liability or make a new contract for the parties. Occidental Fire & Cas. Co. v. Cook, 92 Idaho 7, 9, 435 P.2d 364 (1967); Lively v. City of Blackfoot, *supra* 91 Idaho at 85, 416 P.2d 27; Coburn v. Fireman's Fund Ins. Co., 86 Idaho 415, 420, 387 P.2d 598 (1963); Thomas v. Farm Bureau Mut. Ins. Co. of Idaho, Inc., *supra* 82 Idaho at 319, 353 P.2d 776; Rosenau v. Idaho Mutual Benefit Assn., 65 Idaho 408, 415, 145 P.2d 227 (1944).

In the event of ambiguity, intent of the parties must be resolved in favor of the insured, Abbie Uriguen Oldsmobile Buick, Inc. v. United States Fire Ins. Co., 95 Idaho 501, 507, 511 P.2d 783 (1973); Dunford v. United of Omaha, 95 Idaho 282, 284, 506 P.2d 1355 (1973); Stephens v. New Hampshire Ins. Co., 92 Idaho 537, 540, 447

P.2d 14 (1968); Shields v. Hiram C. Gardner, Inc., 92 Idaho 423, 427, 444 P.2d 38 (1968); Medical-Dental Service, Inc. v. Boroo, 92 Idaho 328, 331, 442 P.2d 738 (1968). If the meaning of the contract is in doubt, it must be construed in the sense in which the insurer believed, at the time of making, the insured understood the terms. Shields v. Hiram C. Gardner, Inc., *supra*. As such, the doctrine of probability or reasonableness has long been a rule of construction geared toward ascertaining intent in situations of ambiguity. The standard to be applied is what a reasonable person in the position of the insured would have understood the language to mean.

The majority, in recognizing reasonable expectation, has applied the doctrine to situations where ambiguity is not involved. They justify such action on a public policy argument of adhesion contract. As set forth earlier in the dissent, I contend that application of the doctrine to an unambiguous situation circumvents its purpose. The Court is faced with determining intent of the parties, and absent ambiguity, intent must be derived from the contract itself.

In the majority's determination of Part 2 benefits, I suggest they precisely applied the correct rules of construction as set forth above. They deny this stating:

"While ambiguities may be highly relevant in determining the reasonable expectations of an insured, nevertheless we deem it clear that the invocation and application of the doctrine of reasonable expectations does not depend for its existence upon the presence of ambiguities."

Notwithstanding the above, the majority fully discusses the patent ambiguity in the contract as found at the magistrate and district court levels and then finally reverts to the maxim that ambiguities in insurance policies are to be resolved in favor of the insured, and holds that Corgatelli may recover at least $300 pursuant to the "shoulder joint" benefits of Part 2.

Thus far they had properly ruled. An ambiguity was found—medical impossibility of dislocation of the collar bone—and intent of the parties was resolved in favor of the insured construing the contract as he understood its terms at the time of making.

Unfortunately, the majority further applied the doctrine of reasonable expectation to double payment provisions concerning open reduction and metallic fixation. Though they stated an ambiguity existed, they failed to argue the point and based application of the doctrine on the before mentioned public policy argument. I contend that no ambiguity existed, and as such the doctrine should not have been applied. Intent clearly was ascertainable from the contract itself,

"For an Open Operation with Bone Grafting or Metallic Fixation at Point of Fracture the Amount Payable will be Twice the Amount Payable for Simple Fracture."

The above phrase, construed in its plain, ordinary sense, is susceptible to but one meaning—double benefits are payable only where outlined procedures are applied to a point of fracture. Testimony is uncontradicted that no fracture was involved. Therefore, benefits under this provision cannot be allowed.

Again, the Court construes an insurance policy for the purpose of determining the intent of the parties. If the contract is unambiguous, intent must be derived from the plain meaning of its language. To revert to the doctrine of reasonable expectation in such an instance controverts its purpose.

The decision of the district court should be affirmed.

McFADDEN, J., joined in dissent.