554 P.2d 948

George **SHULTZ** and Pauline Shultz,
Plaintiffs-Respondents,

v.

Norman J. "Pete" **ATKINS** and Viola Atkins,
husband and wife, Defendants-Appellants.

No. 11950.

Supreme Court of Idaho.
Sept. 22, 1976.

H. William Furchner of Furchner, Martsch & Baker, Blackfoot, for defendants-appellants.

Dean Williams, of Kerr, Williams & Clarke, Blackfoot, for plaintiffs-respondents.

McFADDEN, Chief Justice.

Plaintiffs-respondents, George and Pauline Shultz, instituted this action against defendants-appellants, Norman J. "Pete" and Viola Atkins, and defendants, Thane and Margaret McAllister and Max A. and Lue Dean Williams, seeking a permanent right to draw and use water from a well located on the Atkins' residential property. After a trial to the district court sitting without a jury, judgment was entered that the Shultzes had "a permanent right to have culinary and domestic water delivered from the well". The Atkinses appealed. This court reverses the judgment for the reasons discussed herein.

The evidence presented at trial reflects the following facts. About 1952, McAllister deeded a portion of certain residential property which he owned to Max Williams who was his employee at the time. McAllister maintained his dwelling upon the remaining portions of this property. Williams built a home upon his property. A well was constructed upon the McAllister property about 1953 or 1954;[1] this well replaced another well and supplied water for "culinary and domestic" purposes to both houses. McAllister paid for the costs of the well including the

---

1. Thane McAllister, in his testimony, was unable to specify the date when the well at issue was constructed. Max Williams testified that the well was constructed in 1953 or 1954, after the McAllisters had conveyed the property to him. The district court did not make a finding of fact on point. However, both parties assert in the statement of facts in their briefs that the well was constructed about 1953 or 1954, after the lot was conveyed to Williams.

pump and pressure system and the cost of all of the pipe system located on his property. Williams paid for the pipe laid on his property and he also helped to dig the ditches for the pipe laid on the McAllister property.

In 1957, the McAllisters and Williams entered into a written contract for delivery of water. The parties agreed that the McAllisters would "cause to be delivered to * * * [Williams], through the said system, as aforesaid, necessary and sufficient quantities of water for their reasonable and ordinary domestic and culinary purposes in like manner and to like extent as has been furnished to * * * [Williams] by the * * * [McAllisters] prior to the making of this agreement". The McAllisters also promised to keep the system in good working order and Williams agreed to pay for the water according to a fixed schedule.

The McAllisters sold their property with the well to the defendants-appellants, Atkinses, in 1965. The contract of sale between these two parties transferred the property subject to a "culinary or water use easement and agreement". The warranty deed placed in escrow under this contract also conveyed the property "subject to a culinary or water use easement and agreement".

On September 5, 1973, the Williamses [2] deeded to the plaintiffs-respondents, George and Pauline Shultz their property "[t]ogether with all water rights in that certain water contract between Max A. Williams and Thane McAllister and Margaret F. McAllister . . .".

Prior to the sale of the Williams-Shultz property, Atkins, by a letter dated April 6, 1973, from his attorney, gave Williams notice of his intent to terminate Williams' use of the well water six months from the date of the letter. Williams informed Shultz of Atkins' notice. On October 16, 1973, Atkins, by a letter from his attorney, notified Shultz that he would discontinue water service on June 1, 1974. Water to the Schultz property was shut off about August 15, 1974, but service was resumed at a later date.

In September, 1974, the Shultzes instituted this action against the Atkinses, Williamses and McAllisters, seeking among other relief a permanent right to draw and use water from the well. The Atkinses answered, generally denying the allegations of the complaint, and counterclaimed to enjoin the Shultzes from asserting any claim to the well or the Atkins' property.[3] After trial, the district court found that "Williams acquired an easement or license coupled with an interest for the delivery of culinary and domestic water from the well wholly owned by McAllister". The court also found that the burden of the easement or the license coupled with an interest passed to the Atkinses and that the benefits passed to the Shultzes. The court also ruled that the Atkinses "are bound by the agreement to keep the water supply system in good working order and condition to reasonably accomplish the purposes of the water agreement". Judgment was entered decreeing to the Shultzes "a permanent right to have culinary and domestic water delivered from the well", and ordering the Atkinses "to keep the water supply system in good working order". The Atkinses appealed.[4]

The Atkinses assert error in the district court's ruling that Williams acquired an "easement or a license coupled with an interest for the delivery of culinary and domestic water from the well wholly owned by McAllister". Unfortunately, in its finding, the district court did not differentiate between an easement or a license

2. Max Williams married Lue Dean Williams prior to 1973.

3. Answers by the Williamses and the McAllisters are not a part of the transcript on appeal; this court will assume that the answers were timely filed as the McAllisters and the Williamses participated in the trial.

4. The Williamses and McAllisters choose not to pursue the appeal.

nor did the court define the legal basis for its finding that Williams acquired an easement or license coupled with an interest "for the delivery of water". Thus, it becomes necessary for this court to examine the nature of the terms, easement and license, as they may be applicable to the case at bar.

The term "easement", has been variously defined and a detailed definition of the term is not necessary for the purposes of this opinion. However, an essential element of an easement is that it is "an interest in land in the possession of another." Restatement of Property, § 450 (1944). See, *Sinnett v. Werelus*, 83 Idaho 514, 365 P.2d 952 (1961). An easement may be created in one of three manners—by express agreement, by implication,[5] or by prescription. Restatement of Property, §§ 467, 474, 457 (1944).

Creation of an easement by express agreement requires that the agreement be in writing as an easement is an interest in real property. I.C. § 9–503 *McReynolds v. Harrigfeld*, 26 Idaho 26, 140 P. 1096 (1914). At trial, the only documentary evidence relevant to creation of the purported easement to deliver water was the water agreement entered into in 1957. The 1957 agreement recited that the water supply for both properties was "solely from a well, pump, motor and pressure system situated upon the lands of the [McAllisters] * * * and said water supply system *is owned wholly by them*," and that the parties "mutually desire[d] to enter into an agreement whereby [Williams] shall be entitled to an adequate supply of domestic and culinary water * * *". (Emphasis added.) The parties agreed that the McAllisters would "*cause to be delivered* to [Williams] * * * *through said system*, as foresaid,

*necessary and sufficient quantities of water* for their reasonable and ordinary domestic and culinary purposes * * *." (Emphasis added.) Thus, the McAllisters, by this contract, agreed only to deliver water to Williams. The contract does not purport to grant to Williams any right in McAllisters' property, nor any right to go upon McAllisters' property. Therefore, it is the conclusion of this court that Williams did not acquire an easement by express agreement by which he could implement his contractual right to the delivery of water when he entered into the 1957 water agreement. See Restatement of Property § 450, *supra*.

Establishment of an easement by prescription requires use of the easement in such a way as to constitute "some actual invasion or infringement of the right to the owner" of the subservient property for the prescribed time. *Trunnell v. Ward,* 86 Idaho 555, 559, 389 P.2d 221, 223 (1964) ; *Sinnett v. Werelus, supra.* According to the record, McAllister (and Atkins until 1973) consented to use of his water, his well and pressure system, and the pipe system, by Williams and the record is devoid of any claim of any adverse use. Thus, Williams (and Atkins) did not acquire by prescription an easement to implement his contractual right to the delivery of water.

Moreover Williams did not acquire an easement by implication for "the delivery of water". The creation of such an easement may "be implied or inferred through the presumed intent of the parties based upon the circumstances of separation of land formerly under one ownership, or be implied by reason of public policy * * *, or inferred often fictitiously through long continued use of the easement". 2 Thompson on Real Property, § 351 (1961). In *Close v. Rensink,* 95 Idaho

---

5. Some authorities discuss different types of easement by implication, including implication of easement from pre-existing use and ways of necessity. These species of easement by implication have different requisite elements ; however, these differences are not material to the instant case.

72, 76, 501 P.2d 1383, 1387 (1972), this court discussed the requisite elements for creation of an easement by implication:

> "*Wagner v. Fairlamb, supra,* [151 Colo. 481, 379 P.2d 165] discusses the four requirements to establish an implied easement, as set out in 1 Thompson, Real Proper (perm. ed. 1939) § 396, at p. 647, quoting therefrom:
>
> '(1) Unity and subsequent separation of title; (2) obvious benefit to the dominant and burden to the servient tenement existing at the time of the conveyance; (3) use of the premises by the common owner in their altered condition long enough before the conveyance to show that the change was intended to be permanent; and (4) necessity for the easement.'
>
> "In *Davis v. Gowen,* 83 Idaho 204, 360 P.2d 403 (1961), this Court in discussing the elements essential to create an implied easement for right of way stated then as follows:
>
> 'To establish an easement by implication in favor of the dominant estate, three essential elements must be made to appear;
>
> (1) Unity of title and subsequent separation by grant of dominant estate;
>
> (2) Apparent continuous user;
>
> (3) The easement must be reasonably necessary to the proper enjoyment of the dominant estate.' 83 Idaho at 210, 360 P.2d at 407.
>
> Even though the phraseology of the requirements as set out in *Davis v. Gowen, supra,* is somewhat different from that discussed in 1 Thompson § 396, the same principles are involved."

The Shultzes have the burden of showing "the existence of facts necessary to create by implication an easement appurtenant to" their estate. *Davis v. Gowen,* 83 Idaho 204, 212, 360 P.2d 403, 408 (1961). The record reflects and the parties do not question that the well was built after Williams acquired his estate from McAllister. Because the well was not in existence at the time title was separated, Williams could not claim an easement to the well at the time of the conveyance; thus, unity of title as to the easement to the well with the McAllister's estate and Williams' estate did not exist and so neither Williams nor Shultzes can claim creation of an easement by implication. See 2 Thompson on Real Property, § 363 (1961).

▮ Moreover, in order to claim an easement by implication for "the delivery of water", the Shultzes must prove that such an easement is reasonably necessary for the proper enjoyment of their estate. See *Trunnell v. Ward,* 86 Idaho 555, 389 P.2d 221 (1964); *Eisenbarth v. Delp,* 70 Idaho 266, 215 P.2d 812 (1950). That is, the Shultzes must prove that they were unable to obtain water from another source at a reasonable expense. See, *Trunnell v. Ward, supra.* However, no evidence was introduced which would tend to prove the necessity for the easement.

Therefore, it is the conclusion of this court that neither Williams nor the Shultzes acquired any easement in McAllisters' (Atkins') property related to their contractual right to the delivery of water.

▮ The Atkinses also contend that Williams did not acquire a license coupled with an interest for the delivery of water. In response, the Shultzes assert that, even if Williams did not acquire license coupled with an interest, he did acquire a license for the delivery of water and that this license became irrevocable when Williams expended money and labor in reliance upon the license. According to the Restatement of Property, § 512 (1944), a license, as used in reference to real property,

> " * * * donotes an interest in land in the possession of another which
>
> (a) entitles the owner of the interest to a use of the land, and
>
> (b) arises from the consent of the one whose interest in the land used is affected thereby, and

(c) is not incident to an estate in the land, and

(d) is not an easement."

Thus, an essential element of a license or a license coupled with an interest is the right to use land in the possession of another. Restatement of Property, §§ 512, 513 (1944); see, *Howes v. Barmon*, 11 Idaho 64, 81 P. 48 (1905). The evidence presented suggests only that Williams acquired a personal right to the delivery of water from the well and that his right did not include a license to use McAllisters' property to effect that contractual right of delivery. Thus, as Williams did not acquire a license, this license could not be transformed into an irrevocable license by the Williams' labor expended in digging the ditch for the pipeline.[6]

The Atkinses also argue that Williams did not acquire a perpetual right to the delivery of water by the terms of the 1957 contract. They assert that the contract does not provide for a means or a time for terminating the contract and so the contract is terminable at will upon reasonable notice. The 1957 agreement is silent as to its duration except for a clause which provides, in effect, that the contract may be terminated if Williams failed to pay when due the monthly water charge.

It is questionable as to whether a definite promise to do, or not to do, an act or a series of acts in perpetuity is legally enforceable as such a promise may be contrary to public policy. Corbin on Contracts, § 552 (1960). However, the 1957 contract does not include such a promise. When the duration of the promised performance is not provided for in the contract, a court may imply a promise that the performance is terminable at the will of the parties if reasonable notice of termination is given and if performance has been rendered for a reasonable time. Corbin on Contracts, §§ 96, 568 (1960). *Accord,*

*Tavel v. Olsson*, 535 P.2d 1287 (Nev. 1975); *Consolidated Theatres v. Theatrical Stage E.U.L. 16*, 69 Cal.2d 713, 73 Cal.Rptr. 213, 447 P.2d 325 (1968); *San Francisco Brewing Corp v. Bowman*, 52 Cal.2d 607, 343 P.2d 1 (1959); *J. C. Millett Co. v. Park and Tilford Distillers Corp.*, 123 F. Supp. 484 (D.C.Cal.1954); 1 Williston on Contracts, 3d ed. § 38 (1957). See, 17 Am. Jur.2d Contracts § 486 (1964); 17A C.J.S. Contracts §§ 385(1), 398 (1963). See also, Restatement of Contracts, § 32, Comment b (1932). This case comes within the rules stated above and so it must be reversed.

The judgment in favor of the Shultzes must be reversed. As the Shultzes do not argue any other basis for the relief sought, judgment must be entered in favor of the Atkinses.

Judgment reversed and case remanded with directions to enter judgment in favor of the Atkinses. Costs to defendants-appellants, the Atkinses.

DONALDSON, SHEPARD, and BAKES, JJ., and SCOGGIN, District Judge, concur.

---

6. Therefore, in this opinion, this court does not have to reach the issue of whether a revocable license becomes irrevocable by the expenditure of funds or labor by the licensee in reliance upon the license.