851 P.2d 946

**Diane OSTRANDER, Plaintiff–Appellant,**

**v.**

**FARM BUREAU MUTUAL INSURANCE COMPANY OF IDAHO, INC., an Idaho corporation; Western Community Insurance Company, an Idaho corporation; Western Farm Bureau Life Insurance, Inc., a Colorado corporation, authorized to do business and doing business in Idaho; Farm Insurance Brokerage Company, an Idaho corporation; and Dave Hart, both individually and in his representative capacity as District Manager with the Farm Bureau family of Insurance Companies, Defendants–Respondents.**

No. 19255.

Supreme Court of Idaho,
Lewiston, October 1992 Term.

March 24, 1993.

Rehearing Denied May 25, 1993.

Dissenting Opinion on Rehearing of Justice Bistline May 25, 1993.

Bistline, J., filed dissenting opinion and opinion dissenting on denial of petition for rehearing.

652

Skinner, Fawcett & Mauk, Boise, for appellant. W. Craig James argued.

Hall, Farley, Oberrecht & Blanton, Boise, for respondents. Candy Wagahoff Dale argued.

TROUT, Justice.

## I.

### BACKGROUND AND PRIOR PROCEEDINGS

Diane Ostrander (Ostrander) was an insurance agent for Farm Bureau Mutual Insurance Company (Farm Bureau) for fourteen years before her agreement was terminated in March, 1990. Under the terms of her Special Agent's Agreement with Farm Bureau, Ostrander was an independent contractor. The agreement specified that either party could cancel the agreement at any time, with or without cause.

On August 28, 1990, Ostrander filed a complaint in district court against Farm Bureau and her supervisor, Dave Hart (Hart). Ostrander claimed that Farm Bureau terminated their agreement with her because of her gender and her age, but she did not challenge her status as an independent contractor. In her complaint, Ostrander alleged that Hart intentionally made inaccurate and negative evaluations of her performance in order to support his later termination of her contract.

In response to the complaint, Farm Bureau and Hart filed a motion to dismiss under I.R.C.P. 12(b)(6) for failure to state a claim for which relief could be granted.

The trial court dismissed Ostrander's claims but gave her leave to file an amended complaint to allege breach of contract. At the request of Ostrander, the trial court certified the dismissal as final and Ostrander appealed to this Court.

Ostrander alleged four different causes of action, each of which is an issue on appeal. She argues: (1) she was dismissed in violation of public policy; (2) Farm Bureau violated the covenant of good faith and fair dealing; (3) her supervisor, Dave Hart, tortiously interfered with her contract; and (4) she is entitled to treble damages for unpaid commissions as a claim for wages under Title 45, Chapter 6 of the Idaho Code.

## II.

### STANDARD OF REVIEW

■ Our standard for reviewing a dismissal under Rule 12(b)(6) is the same as our standard for summary judgment. *Tomchak v. Walker*, 108 Idaho 446, 447, 700 P.2d 68, 69 (1985). When the Court considers the question of whether a claim for relief has been stated, the record must be considered in a light most favorable to the non-moving party. *Miles v. Idaho Power Co.*, 116 Idaho 635, 637, 778 P.2d 757, 759 (1989). In the present case, we must consider Ostrander's allegations in her complaint to be true in determining whether Ostrander has stated a claim for which relief may be granted.

## III.

### OSTRANDER DOES NOT HAVE A TORT CLAIM BASED ON A VIOLATION OF PUBLIC POLICY

Ostrander states that she was terminated as an independent contractor for Farm Bureau based on her age and her gender. While Idaho courts have recognized claims based on an allegation that a specific provision of a contract is against public policy,[1]

---

**1.** *See, e.g., State v. Clark,* 102 Idaho 693, 638 P.2d 890 (1981) (procurement of services for prostitutes is not consideration because it violates the law and public policy); *Foremost Ins.*

*Co. v. Putzier,* 100 Idaho 883, 606 P.2d 987 (1980) (public policy may prohibit an exclusionary provision in an insurance contract); *Shultz v. Atkins,* 97 Idaho 770, 775, 554 P.2d 948, 953

those cases are not applicable to Ostrander's claim. Ostrander does not claim that her independent contractor agreement, or any of its terms, were against public policy; rather, she argues that the reasons for her dismissal were against public policy. Accordingly, this case is distinguishable from cases where we recognized that particular terms of a contract may be unenforceable as against public policy.

Ostrander argues that her dismissal violated the public policies embodied in Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e (Title VII), the Age Discrimination in Employment Act, 29 U.S.C. § 623 (ADEA), and the Idaho Human Rights Act, I.C. §§ 67–5901 to –5912. Here she states that the Court should provide a remedy in tort to assure the effectiveness of these provisions. We have recognized that when a legislative provision protects a certain class of persons but does not provide a civil remedy, the court may accord an injured member of the class a right of action in tort. *White v. Unigard Mut. Ins. Co.*, 112 Idaho 94, 101, 730 P.2d 1014, 1021 (1986) *citing Restatement (Second) of Torts* § 847A (1965).

■ However, Ostrander has not shown that she is in the class of persons protected by any legislative provision. The statutes on which Ostrander bases her public policy claim were not intended to protect independent contractors. Title VII and the ADEA apply exclusively to employees, and not to independent contractors. *Knight v. United Farm Bureau Mut. Ins. Co.*, 950 F.2d 377, 380 (7th Cir.1991) (independent contractors are not protected by Title VII); *Falls v. Sporting News Pub. Co.*, 834 F.2d 611, 613 (6th Cir.1987) (independent contractors are excluded from the protection of Title VII and the ADEA). The Idaho Human Rights Act embodies the policies of the Civil Rights Act of 1964 and the ADEA. I.C. § 67–5901(1). In interpreting the Idaho Human Rights Act we are guided by federal law. *O'Dell v. Basabe*, 119 Idaho 796, 811, 810 P.2d 1082, 1097 (1991). It

follows that the protections of the Idaho Human Rights Act are also limited to employees.

■ As an independent contractor, Ostrander is not protected by the provisions of Title VII, the ADEA or the Idaho Human Rights Act. These statutes do provide civil remedies, they are just not available to independent contractors. Thus, Ostrander has no cause of action for a violation of public policy under these statutes.

■ We note that the Court has previously enunciated an exception to employment-at-will contracts where a discharge is for a reason contravening public policy. *See, e.g., Jackson v. Minidoka Irrigation Dist.*, 98 Idaho 330, 563 P.2d 54 (1977); *MacNeil v. Minidoka Memorial Hosp.*, 108 Idaho 588, 701 P.2d 208 (1985); *Clement v. Farmers Ins. Exch.*, 115 Idaho 298, 766 P.2d 768 (1988), *citing Anderson v. Farm Bureau Mut. Ins. Co. of Idaho*, 112 Idaho 461, 732 P.2d 699 (Ct.App.1987). This exception, however, has been applied only in employee-employer relationships and not to independent contractors. We decline the opportunity to expand this exception to include independent contractors.

## IV.

## OSTRANDER DOES NOT HAVE A CLAIM FOR VIOLATION OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

■ Ostrander asks this Court to apply the covenant of good faith and fair dealing to her as an independent contractor. Until now, the Court has not directly decided the issue of whether the covenant applies to independent contractors. We now hold that the implied covenant of good faith and fair dealing does not apply to independent contractors.

In *Clement v. Farmers Ins. Exch.*, a 3–2 majority of the Court held that the implied covenant of good faith did not apply to the appellant, who by his own admission was

(1976) (promise to perform a series of acts in perpetuity may be against public policy); *Smith v. Idaho Hosp. Serv., Inc.*, 89 Idaho 499, 406 P.2d

696 (1965) (an exclusionary clause in an insurance contract may be void as against public policy).

an independent contractor. 115 Idaho 298, 766 P.2d 768. Two members of the majority stated that the covenant would not invalidate an express contractual provision which provides for termination. In a special concurrence, the third member of the majority specifically declined to extend the application of that covenant to independent contractors, opting to wait until the issue was properly presented to determine if it should even apply to employees. *Id.* at 302, 766 P.2d at 772.

*Metcalf v. Intermountain Gas Co.,* 116 Idaho 622, 778 P.2d 744 (1989), presented the Court with the opportunity to decide that issue as it applied to an employee. The Court held that employees may have a cause of action under the covenant of good faith and fair dealing in certain circumstances. In adopting the covenant, though, the Court specifically applied it to employees rather than independent contractors.

> Nevertheless, it is the opinion of this Court today that in employer-employee relationships (as distinguished from principal-agent (independent contractor) relationships, *Clement v. Farmers Insurance Exchange, supra*) we should adopt an implied-in-law covenant of good faith and fair dealing (the covenant) as hereinafter outlined.

*Id.* at 626, 778 P.2d at 748.

We recognize that due to bargaining position and other circumstances surrounding a working relationship some nominal independent contractors may be de facto employees. However, in cases such as this one, where the plaintiff does not challenge her status as an independent contractor, there is no cause of action under the implied covenant of good faith and fair dealing.

## V.

### OSTRANDER DOES NOT HAVE A CLAIM FOR TORTIOUS INTERFERENCE WITH CONTRACT AGAINST HER SUPERVISOR

Ostrander claims that her supervisor, Dave Hart, tortiously interfered with her contract with Farm Bureau. In *Barlow v.*

*International Harvester Co.,* 95 Idaho 881, 522 P.2d 1102 (1974), we listed the elements of tortious interference with contract by a third party as: (a) the existence of a contract; (b) knowledge of the contract on the part of the defendant; (c) intentional interference causing a breach of contract; (d) injury to the plaintiff resulting from the breach.

The general rule is that a party cannot tortiously interfere with its own contract. *See Houser v. City of Redmond,* 91 Wash.2d 36, 586 P.2d 482, 484 (1978); *Payne v. Pennzoil Corp.,* 138 Ariz. 52, 57, 672 P.2d 1322, 1327 (1983); *Nordling v. Northern States Power Co.,* 478 N.W.2d 498, 505 (Minn.1991); *Bolz v. Myers,* 200 Mont. 286, 651 P.2d 606, 609 (1982); *Michelson v. Exxon Research and Eng'g Co.,* 808 F.2d 1005, 1007–1008 (3rd. Cir.1987) *citing Glazer v. Chandler,* 414 Pa. 304, 200 A.2d 416 (1964). Furthermore, the actions of an agent are the actions of the corporation; an agent is only liable for actions which are outside its scope of duty to the corporation. *See Houser,* 586 P.2d at 485; *Nordling,* 478 N.W.2d at 506; *Welch v. Bancorp Management Advisors, Inc.,* 296 Or. 208, 675 P.2d 172, 177 (1983).

In her complaint, Ostrander does not allege that Hart took any actions that were outside his capacity as her supervisor. Ostrander only alleged that Hart intentionally made inaccurate evaluations of her performance and then dismissed her. As an agent of Farm Bureau, Hart had the authority to evaluate Ostrander and terminate her contract. Since Hart's actions with respect to Ostrander were within the scope of his authority as an agent of Farm Bureau, there was no third party to the contract. Accordingly, Ostrander has not stated a claim for tortious interference with contract.

## VI.

### OSTRANDER DOES NOT HAVE A CLAIM FOR TREBLE DAMAGES UNDER THE WAGE PROVISIONS OF TITLE 45, CHAPTER 6 OF THE IDAHO CODE

Under certain circumstances, an employee may be entitled to treble dam-

ages for unpaid commissions under I.C. §§ 45–601 to –617. This statute governs claims by employees for unpaid wages. An "employee" is defined as "any person suffered or permitted to work by an employer." I.C. § 45–601. As indicated in Parts III and IV of this opinion, courts have recognized a clear distinction between employees and independent contractors. By using the term "employee", the legislature indicated that the provisions of Chapter 6 should apply only to employees, not independent contractors. Ostrander readily conceded in her complaint that she is an independent contractor. Accordingly, Ostrander does not have a cause of action for treble wages under a statute written only to benefit employees.

## VII

### CONCLUSION

For the reasons stated herein, the trial court correctly found that Ostrander did not state a claim for which relief could be granted under I.R.C.P. 12(b)(6). The decision of the trial court is affirmed.

Costs to respondent. No attorney fees on appeal.

McDEVITT, C.J., JOHNSON, J., and BAKES, Justice Pro Tem. (following retirement on February 1, 1993) concur.

BISTLINE, Justice, dissenting.

Today the Court holds that independent contractors may be terminated solely because of their age or gender. I disagree. The better course of action for the Court would be to hold that such terminations are void for public policy and violate the duty of good-faith and fair dealing implied in every contract.

### *Public Policy*

As the majority recognizes, this Court has held that an employer may be held liable for wrongful discharge of an at-will employee when the motive for the discharge violates public policy. *See, e.g. Jackson v. Minidoka Irrigation Dist.,* 98

Idaho 330, 333, 563 P.2d 54, 57 (1977); *MacNeil v. Minidoka Memorial Hospital,* 108 Idaho 588, 589, 701 P.2d 208, 209 (1985). Yet today, the majority "decline[s] the opportunity to expand those holdings to independent contractors." Maj. 123 Idaho at 653, 851 P.2d at 949. The inquisitive reader may have paused at this point in the majority's opinion and asked the question: "Why should an at-will employee be treated differently than an at-will independent contractor?" This reader did so and was disappointed to find that this question is left unanswered in the majority opinion. Hence, today issues a majority opinion complete with its holdings wholly unsupported by even a facsimile of a *ratio decidendi.* I venture to say that Ruggero J. Aldisert would shudder at the thought.[2]

Perhaps the majority's lack of discussion is caused by the absence of any sound reason for treating at-will employees differently from independent contractors who, under the terms of a written contract, may be terminated at will. Why should we allow an independent contractor to be terminated for reasons which would be void for public policy if s/he were an employee? And why is the termination of an independent contractor because s/he is thought to be the wrong age or the wrong sex (or, presumably, wrong race, color, or religion) less violative of public policy than the termination of an at-will employee for the same reason(s)? Realistically, there is no reason to permit such disparate treatment, regardless of the legal contortions in which the majority engages or the meaningless factual distinctions the majority advances.

Ironically, if Ostrander were an employee, she would not need to look to the public policy exception to the employment at will doctrine because employees are specifically protected against age and gender discrimination by state and federal statute. I would extend the public policies embodied in those statutes to any such circumstances as presented in this case and would hold that at-will termination clauses in independent contractor contracts do not permit ter-

2. *See generally,* Ruggero J. Aldisert, *The Judicial* Process (West Publishing Co., 1976).

mination of employment on age or gender based reasoning.

## Good Faith and Fair Dealing

Later in the majority's opinion, the Court recognizes that we have never decided the issue of whether the covenant of good faith and fair dealing applies to contracts involving independent contractors, although we have held it applies to at-will employment contracts. *Metcalf v. Intermountain Gas Company,* 116 Idaho 622, 778 P.2d 744 (1989). The majority then goes on to hold that "the implied covenant of good faith and fair dealing does not apply to independent contractors." Maj. 123 Idaho at 653, 851 P.2d at 949. Again, the majority offers no analysis in support of its holding. ·

In my opinion, it makes no sense to say there is no covenant of good faith and fair dealing in the Ostrander–Farm Bureau contract when we have consistently held that the implied covenant exists in *every* contract, *see, e.g., Idaho First National Bank v. Bliss Valley Foods,* 121 Idaho 266, 287, 824 P.2d 841, 853 (1991) (commercial transaction); *Luzar v. Western Surety,* 107 Idaho 693, 696, 692 P.2d 337, 340 (1984) (surety agreement); *White v. Unigard Mut. Ins. Co.,* 112 Idaho 94, 96, 730 P.2d 1014, 1016 (1986) (insurance contract), even at-will employment contracts. *Metcalf v. Intermountain Gas Co.,* 116 Idaho 622, 625, 778 P.2d 744, 746 (1989). Certainly, there is a bizarre lack of analysis and consistency in holding that there exists a duty of good faith and fair dealing in a contract between arms-length commercial parties, yet none is to be found in an independent contractor's contract. At the very least, the majority should hold that there does exist a duty of good faith and fair dealing, even if it does not find that firing on the basis of gender or age implicates that duty.

I am, as was Justice Huntley, "unconvinced there is any difference between employees at will and independent contractors when a bad faith termination is involved." And, as today's offering by the majority offers no reason to depart from that view, I believe that "the limited protection afforded by law applies equally to both [employees and independent contractors]." *Clement v. Farmers Ins. Exchange,* 115 Idaho 298, 306, 766 P.2d 768, 776 (1988) (Huntley, J. dissenting).

## ON DENIAL OF PETITION FOR REHEARING.

BISTLINE, Justice, dissenting.

*Tempus fugit.*

The elapse of time since the pro and con opinions of this Court were issued in *Clement v. Farmers Ins. Exchange*[1] is just six months short of ten years. The Court was divided three-to-two against Clement, with Chief Justice Shepard writing for the majority, joined by Justices Bakes and Johnson. Justice Huntley wrote the lead dissenting opinion in which, over thirteen columns of printed pages, he carefully documented the salient errors observed in the majority opinion and his conviction that there is no difference between employees at will and independent contractors where a bad faith termination is involved. "Therefore the limited protection afforded by law applies equally to both. *Anderson v. Farm Bureau Mutual Insurance Co. of Idaho,* 112 Idaho 461, 468, 732 P.2d 699, 706 (1987)." *Clement,* 115 Idaho at 306, 766 P.2d at 776.

Justice Huntley's efforts at stemming the majority's tide were *not* an impulsive thought, but in reality a veritable treatise. Therein he cited to and laid out in full the provisions of I.C. § 72–1302, Declaration of State Public Policy. 115 Idaho at 307, 766 P.2d at 777. Following that excerpt he quoted from this Court's earlier statement in *Custom Meat Packing Co. v. Martin,* 85 Idaho 374, 384, 379 P.2d 664, 670 (1963), "that the policy of the Employment Security Law is to encourage the employer and employee to adjust their differences and thus avoid interrupting the employment."

Justice Huntley respected the special concurring opinion of Justice Johnson, as to which he observed:

**1.** *Clement v. Farmers Ins. Exchange,* 115 Idaho 298, 766 P.2d 768 (1988).

The special concurring opinion of Justice Johnson correctly notes that we are not dealing with an employment agreement, but rather are dealing with an independent contractor agreement. No one has contended to the contrary and the careful reader will note that several of the authorities I have above analyzed make reference to both employees and/or agents.

I think it is a sad day for 'justice' when this Court, having before it a case of first impression, adopts the following rule of law:

> There is no cause of action in Idaho for an intentional, willful, bad faith termination of an agency relationship.

Most other wrongful, willful and bad faith violations of relationships between individuals or entities in the United States of America are actionable. The majority articulates no plausible reason for an exception when the tort feasor happens to be the principle of an 'at will' agency contract.

*Clement,* 115 Idaho at 309, 766 P.2d at 779. Encouraged by the words of Justices Huntley and Johnson, this justice, too, found time to add views supporting what they had submitted, but of lesser import, notable only for suggesting the applicability of the Doctrine of Reasonable Expectations, created by Justice Shepard in *Corgatelli v. Globe Life Ins. Co.,* 96 Idaho 616, 619, 533 P.2d 737, 740 (1975).

Unfortunately, as the readers learn on perusing the sequel to *Clement,* the carefully chosen words of Justice Huntley may see another ten years pass by before an opinion is authored which embraces the views which he so painstakingly advanced in the effort to illustrate that there is no genuinely sound basis for differentiating between an employee and an "independent contractor" for the purpose of disqualifying the latter from receiving that which is due them. Many are working people, both men and women, who in finding and accepting work are escalated to the status of "independent contractors," and thus exposed to summary discharge sans just compensation or fundamental fairness.